Roger W. PAYNE, Plaintiff,

v.

UNITED STATES of America, Defendant
and Third–Party Plaintiff,

v.

Billy JAMES, Third–Party Defendant.

Civ. A. No. 79–C–284.

United States District Court,
D. Colorado.

Oct. 20, 1980.

Arnold C. Wegher, David R. DeMuro, Wegher & Fulton, P.C., Denver, Colo., for plaintiff.

Angelo I. Castelli, Tax Division, Dept. of Justice, Washington, D. C., for third–party defendant.

MEMORANDUM OPINION AND ORDER

I.

CARRIGAN, District Judge.

This is an action to recover penalties wrongfully assessed. Roger W. Payne was assessed a 100% penalty as a person respon-

sible for willful failure to pay withholding taxes owed for the first and second quarters of 1974. The authority for such an assessment is granted by 26 U.S.C. § 6672. The government has moved for summary judgment against Payne pursuant to Rule 56, F.R.Civ.Proc., arguing that there is no issue of material fact, and that, as a matter of law, he is a "responsible person" who may be assessed for 100% of the withholding taxes owed by Intermountain Truck Brokers, Inc. ("Intermountain").

Payne also has moved for summary judgment pursuant to Rule 56. He argues that there is no genuine issue of material fact as to his liability for the first quarter of 1974, and that, as a matter of law, he may *not* be assessed for 100% of the withholding taxes owed for that first quarter. As to his liability for the second quarter, Payne argues that there is a genuine issue of material fact.

Payne and the government agree to certain facts. During 1973, Payne was a director, officer, and shareholder of Intermountain. Early in April of 1974, he was authorized to sign checks for Intermountain. On April 29, 1974, in his capacity as Intermountain's vice–president, he signed the corporation's quarterly return reporting withholding taxes owed for the first quarter of 1974. At a special meeting of Intermountain's Directors held April 30, 1974, Payne was elected president of the corporation and became its chief executive officer. Intermountain was declared bankrupt on or about June 27, 1974, and was discharged in bankruptcy on or about March 9, 1976.

## II. *Liability for the First Quarter of 1974.*

Both parties have moved for summary judgment on the question of Payne's liability for Intermountain's failure to pay withholding taxes for the first quarter of 1974. Cross–motions for summary judgment are to be treated separately; denying one does not require granting the other. *Buell Cabinet Co., Inc. v. Sudduth*, 608 F.2d 431, 433 (10th Cir. 1979).

The government argues that Payne's signing of the first quarter withholding tax return on April 29, 1974, coupled with his status on that date as an officer (vice–president), director, and shareholder, establishes that he had sufficient control over the decision not to pay the withholding taxes to render him subject to assessment for 100% of the taxes.

The government has cited no authority which holds that the presence of these attributes establishes, as a matter of law, that Payne is a "responsible person" under Section 6672. Actually, the government is asking this Court to draw from these facts an inference that Payne had sufficient control of Intermountain during the first quarter to be held to a 100% assessment. That inference is certainly permissible, but it is not the only possible or reasonable inference. Since more than one inference may be drawn from the facts, a genuine issue of material fact remains.

Payne's deposition testimony also shows that a genuine issue of material fact exists. In deposition, Payne stated that the third–party defendant, Bill James, controlled Intermountain and made the decisions regarding payment of creditors until Payne became president and chief executive officer on April 30, 1974. (Payne dep., pp. 27–30). The question of who had the "final word" during that first quarter is critical in deciding whether the plaintiff is a "responsible person." *Maggy v. United States*, 560 F.2d 1372, 1374 (9th Cir. 1977), *cert. denied*, 439 U.S. 821, 439 U.S. 821, 99 S.Ct. 86, 58 L.Ed.2d 112 (1978). A genuine issue of material fact on that question makes summary judgment inappropriate.

As to the plaintiff's cross–motion for summary judgment, it is true that Payne's deposition testimony might be sufficient to sustain a jury verdict in his favor. However, that is not the standard applied to a motion for summary judgment. The evidence which the government sets forth in support of its motion for summary judgment at least establishes that there is a genuine issue of material fact as to Payne's responsibility for Intermountain's failure to pay over its withholding funds. Also, the

evidence Payne offers in his deposition must be evaluated for its credibility, a function difficult to perform by perusing the cold transcript of a deposition. The jury demanded in this case is a superior instrument for evaluating the credibility of testimony. The determination of the plaintiff's liability should be left to that fact–finder. Therefore, both motions for summary judgment as to Payne's liability for the first quarter's unpaid withholding taxes must be denied.

### III. *Liability for the Second Quarter of 1974.*

The government has moved for summary judgment on the question of Payne's liability for withholding taxes owed by Intermountain for the second quarter of 1974. The government argues that, as a matter of law, Payne was a responsible person who willfully failed to pay over those funds. Plaintiff opposes this motion, arguing that there is a genuine issue of material fact.

Payne concedes that he is a "responsible person" at least as to part of the second quarter. However, he argues that he cannot be held responsible for the entire quarter since he did not become president and chief operating officer until April 30, 1974. Further he contends that he did not "willfully" refuse to pay over the withholding taxes, asserting in explanation that Intermountain did not have enough funds to pay the amount due the government when he began his tenure as president.

■ The government has offered Intermountain's bank records to prove that funds were available to pay the withholding taxes. However, Payne had testified in deposition that Intermountain was a broker and held, in its accounts, funds which belonged to its clients. (Payne dep., pp. 48–49). From this evidence, it appears that there is a genuine issue of material fact regarding the willfulness of the plaintiff's failure to pay over the taxes owed, or at least a portion of them. Therefore, the government's motion for summary judgment as to Payne's liability for the second quarter of 1974 must be denied.

### IV. *Allocation of Payments.*

The government has also moved for partial summary judgment on the issue of damages. A total of $32,397.90 was assessed against Payne by the IRS. However, $7,143.55 of this amount was paid by the bankruptcy trustee for Intermountain. The remainder was paid by Payne. Payne does not seek recovery of the $7,143.55 paid by the trustee, but claims that this Court has authority to allocate between the first and second quarters of 1974 the payments already made.

Payne relies on Revenue Ruling 73–305. That ruling states as a general policy, when no applicable instructions are given by the taxpayer, that the IRS will apply the earliest payment to the oldest debt, whether tax, penalty, or interest, then owed. He claims that the IRS has not followed this policy in his case. However, the final paragraph of Revenue Ruling 73–305 expressly states that it does not apply to withheld employment taxes. Therefore, this ruling provides no support for Payne's position.

The government argues that, at least as far as Section 6672 penalties are concerned, the IRS has discretion to apply payments to the portion of the tax liability least likely to be collected, unless the taxpayer has made an explicit request that payment be allocated to a particular quarter. This clearly is the law in the Fifth Circuit. *Liddon v. United States*, 448 F.2d 509, 513 (5th Cir. 1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972). Cases in the Third, Eighth, and Ninth Circuits also seem to support this proposition, at least by inference. *Emshwiller v. United States*, 565 F.2d 1042, 1046 (8th Cir. 1977); *Pacific National Insurance Co. v. United States*, 422 F.2d 26, 33 (9th Cir.), *cert. denied*, 398 U.S. 937, 90 S.Ct. 1838, 26 L.Ed.2d 269, *rehearing denied*, 400 U.S. 883, 91 S.Ct. 116, 27 L.Ed.2d 121 (1970); *Gates v. United States*, 409 F.2d 1320, 1322 (9th Cir. 1969); *Datlof v. United States*, 370 F.2d 655, 658 (3d Cir. 1966), *cert. denied*, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 624 (1967).

574

■ It is uncontroverted that neither Payne nor the trustee in bankruptcy gave the IRS any instructions regarding allocation of the payments each made on the Intermountain tax liability. Under the rule of the *Liddon* case, Payne has no legal basis to complain of the allocation made by the IRS. Since the only grounds for bringing before this Court the $7,143.55 paid by the trustee is the question of allocation, the government should be granted summary judgment on this issue.

## V. *Variance.*

At oral argument on these motions, counsel for the government raised the issue of variance between Payne's claim for refund of the assessment against him for the second quarter of 1974 and his complaint in this suit for refund. With the Court's permission, the government filed a supplementary memorandum of law on this issue. This document is styled a "Motion for Partial Dismissal." The government contends that Payne may not challenge the IRS assessment for the second quarter since Payne did not state in his claim for refund that he was not a "responsible person" for that quarter.[1]

■ A review of the pleadings in this case indicates that Payne's challenge to the second quarter assessment is based on two contentions. The first is that Payne, though in control of the corporation for most of the second quarter, did not become president and chief executive officer until April 30, 1974, the final day of the first month in that quarter. Payne argues that he should not be held liable for that first month, since Bill James still controlled Intermountain until the last day of that month. There is, however, nothing in Payne's claim for refund for the second quarter to indicate that Payne bases his claim on these facts. Therefore, a variance

exists between the claim and the complaint as to this theory of non-liability. This Court has no jurisdiction to hear evidence attempting to prove this theory. *United States v. Felt & Tarrant Manufacturing Co.,* 283 U.S. 269, 271–72, 51 S.Ct. 376, 377, 75 L.Ed. 1025 (1931); *Herrington v. United States,* 416 F.2d 1029, 1032 (10th Cir. 1969).

Payne's second contention is that his failure to pay was not "willful" since Intermountain did not have sufficient funds to pay the withholding obligations. His claim for refund does allege facts that would give the IRS the opportunity to consider and dispose of this contention. *Herrington v. United States,* 416 F.2d at 1032.

The government's motion to dismiss the complaint is granted as to Payne's contention that he was not "responsible" for the entire second quarter of 1974. The motion to dismiss is denied as to Payne's contention that his failure to pay was not "willful."

IT IS ORDERED that the defendant's motion for partial summary judgment is granted. Plaintiff's claim for allocation of the $7,143.55 paid to the defendant by the trustee in bankruptcy is hereby dismissed.

IT IS FURTHER ORDERED that the defendant's motion for partial dismissal is granted. Plaintiff's claim that he was improperly assessed for the second quarter of 1974 may not be proven by evidence that he did not control Intermountain Truck Brokers, Inc. during part of that second quarter.

---

1. Payne's claim for refund, attached as Exhibit "D" to the government's Motion for Summary Judgment, reads in part:

"1. Upon information and belief I state that the amount of the Section 6672 penalty is mathematically incorrect because some of the payroll checks upon which the penalty was computed were never honored, even though presented for payment several times. 2. Upon information and belief I state that there was no way of borrowing money with which to pay Inter–Mountain's alleged liability, and there were no unencumbered assets to pledge as security."