**Robert J. GRAY, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 81–1386.**

United States District Court, D. Kansas.

March 22, 1984.

Daniel W. Forker, Jr., of Hodge, Reynolds, Smith, Peirce & Forker, Hutchinson, Kan., for plaintiff.

Glen R. Dawson, Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant.

## OPINION AND ORDER

THEIS, Senior District Judge.

This is an action by Robert J. Gray [Gray] to recover a tax penalty assessed against him pursuant to 26 U.S.C. § 6672 for failure to pay to the government federal employment taxes withheld from employees' wages. Defendant United States of America [United States] has filed a counterclaim for the balance of the tax penalty levied against Gray. This case is currently before the Court on the motion of the United States for summary judgment. For the reasons that follow, this motion shall be granted.

The following facts, having not been disputed by Gray in accordance with Local Rule 15(c), are deemed admitted for the purposes of this summary judgment motion.

In 1978, several sporting goods stores merged into a single corporation which was called G.W. Sporting Goods, Inc. [G.W.]. Gray was named the President of this new corporation. The by-laws of G.W. established Gray's responsibilities as President of G.W. as including:

> The President shall be the principal executive officer of the corporation and, subject to the control of the Board of Directors, shall in general supervise and control all of the business and affairs of the corporation. He shall preside at all meetings of the stockholders and of the Board of Directors. He shall sign, with the Secretary or other proper officer, all

corporate documents and instruments which the Board of Directors has authorized to be executed, or as required by law and in general shall perform all duties incident to the office of President and such other duties as may be prescribed by the Board of Directors from time to time.

Dk. No. 17, Exhibit C. Gray was also the managing officer of G.W., a member of the Board of Directors, and the principal stockholder.

Gray's duties at G.W. extended into the area of the corporation's finances. Gray was authorized to sign checks on behalf of G.W. although checks for more than $5,000 required two signatures. In fact, most of the checks for G.W. were written and signed by either Gray or Steve Morford, G.W.'s Secretary. The bills for the corporation originally went to Steve Morford. However, most of the bills were actually paid by Gray. Gray would also determine which of the creditors would be paid and in what sequence. Gray was also responsible for preparing the payroll with the aid of a bookkeeper.

In late 1979, it was apparent that G.W. was having serious financial problems. Gray resigned as President of G.W. on November 3, 1979. On November 26, 1979, the Kansas State Bank in Newton, Kansas took possession of the stores and assets of G.W. pursuant to G.W.'s security agreements with the Kansas State Bank. That same day, an involuntary petition in bankruptcy was filed against G.W. by several of its creditors under Chapter 11. The bankruptcy was later converted to a Chapter 7 liquidation bankruptcy.

During 1979, G.W. also began failing to deposit employment taxes withheld from employees' paychecks as required. *See* 26 U.S.C. § 7501. Specifically, G.W. failed to make deposits of employment taxes in the amounts of $20,231.40 for the second quarter of 1979 and $25,433.79 for the third quarter. After Gray resigned, G.W. made its tax deposits in the fourth quarter of 1979 for all corporate payrolls after November 1, 1979. However, during the month of October of 1979, G.W. failed to make required deposits of $4,073.88 in withheld employment taxes. Gray has admitted that he knew in February of 1979 that the employment taxes were not being paid.

Pursuant to 26 U.S.C. § 6672 [§ 6672], Gray was assessed for $39,976.64 of the unpaid employment taxes. Gray made a partial payment of $278.09, bringing his unpaid balance to $39,701.53 including fees and collection costs. The Internal Revenue Service [I.R.S.] was awarded a dividend of $17,442.38 from the bankruptcy estate of G.W. No request was ever made by Gray or any agreement ever made with the I.R.S. as to how those monies would be applied. Ultimately, $568.65 of the dividend was applied to the penalty assessment against Gray leaving a balance due of $39,132.88 plus interest. This suit then followed.

The Court is familiar with the limited conditions in which summary judgment may be granted. Summary judgment may be granted only if "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The Tenth Circuit has noted that the relief offered by Rule 56 is "drastic, and should be applied with caution ...." *Machinery Center, Inc. v. Anchor National Life Ins. Co.*, 434 F.2d 1, 6 (10th Cir.1970). Therefore, the Court must look at the record in the light most favorable to the non-moving party. *Lindley v. Amoco Production Co.*, 639 F.2d 671 (10th Cir.1980); *Prochaska v. Marcoux*, 632 F.2d 848 (10th Cir.1980), *cert. denied* 451 U.S. 984, 101 S.Ct. 2316, 68 L.Ed.2d 841 (1981). Furthermore, before summary judgment may be granted, the moving party must establish its entitlement to summary judgment beyond a reasonable doubt. *Madison v. Deseret Livestock Co.*, 574 F.2d 1027, 1037 (10th Cir. 1978); *Mustang Fuel Corp. v. Youngstown Sheet & Tube Co.*, 516 F.2d 33, 36 (10th Cir.1975). Summary judgment should not be granted if circumstantial evidence or factual inferences tend to estab-

lish genuine issues for trial. *Barber v. General Electric Co.,* 648 F.2d 1272 (10th Cir.1981); *Frito-Lay, Inc. v. Retail Clerks Union, Local No. 7,* 629 F.2d 653 (10th Cir.1980).

■■■ The United States assessed Gray with a 100 percent penalty pursuant to § 6672. That section provides that:

[a]ny person required to collect, truthfully account for, and pay over any [employment withholding tax] who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over.

26 U.S.C. § 6672(a). Before Gray may be held liable under § 6672, two elements must be shown. First, he must be a "responsible person," one who is required to collect and pay over the taxes, and second, he must have "willfully" failed to have performed that duty. *See Barnett v. United States,* 594 F.2d 219 (9th Cir.1979); *Burden v. United States,* 486 F.2d 302 (10th Cir.1973). When there is no genuine issue as to any material fact regarding the issues of "responsibility" and "willfulness", summary judgment is appropriate. *See, e.g., Barnett, supra; Mazo v. United States,* 591 F.2d 1151 (5th Cir.1979) *cert. denied* 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54. The United States contends that there is no disputed issue of material fact in this case and that summary judgment for the United States is therefore appropriate. This Court agrees.

■■■ A "responsible person" includes an officer or employee of a corporation who has the authority and responsibility to insure that the withheld taxes are paid. *Monday v. United States,* 421 F.2d 1210 (7th Cir.1970) *cert. denied* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48, 26 U.S.C. § 6671. Liability attaches under § 6672 to those in the corporate structure who have significant control over which creditors should be

paid and when. *Adams v. United States,* 504 F.2d 73 (7th Cir.1974); *Turner v. United States,* 423 F.2d 448 (9th Cir.1970). Absolute control of the corporation's finances is not required. *Hartman v. United States,* 538 F.2d 1336 (8th Cir.1976); *Turner, supra.*

Some courts, in determining who is a responsible person, have looked to a number of factors: identity of officers, directors, and principle stockholders, duties of officers as outlined in the corporate by-laws, authority to sign checks on behalf of the corporation, identity of individuals who hire and discharge employees, identity of individuals in control of the corporate finances. *See, e.g., Braden v. United States,* 318 F.Supp. 1189 (S.D.Ohio 1970), *aff'd* 442 F.2d 342 (6th Cir.1971), *cert. denied* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185. Other courts have utilized a rebuttable presumption that a person is a "responsible person" if he is the founder, chief stockholder, president, and member of the board of directors of the corporation. *E.g., McCarty v. United States,* 437 F.2d 961, 194 Ct.Cl. 42 (1971).

■■■ It is clear that, whichever test is employed, Gray may be considered a "responsible person." Gray was President, a director, and principle stockholder of G.W. His duties as President set forth in the corporate by-laws required him to "supervise and control all of the business and affairs of the corporation." Dk. No. 17, Exhibit C. He was authorized to sign checks on the corporation's behalf. He held substantial control over the corporate finances, determining which creditors would be paid and when, and often writing the checks himself. In short, Gray had sufficient control over the corporation and its finances to be considered a "responsible person" subject to liability under § 6672.

■■■ It is no defense that other individuals in the corporation may also have had sufficient control over the corporate finances to be considered "responsible persons" also. The liability under § 6672 is joint and several. *Brown v. United States,*

591 F.2d 1136 (5th Cir.1979); *Hartman, supra.* The United States can only collect the amount of unpaid employment taxes once but it may choose the party from whom it will collect. *Abrams v. United States,* 333 F.Supp. 1134 (S.D.W.Va.1971); *Scherer v. United States,* 228 F.Supp. 168 (S.D.Idaho 1963). Gray's argument that another individual in the corporation may also be a "responsible person" does not release Gray from liability under § 6672.

■ The second element to liability under § 6672 is "willfully" failing to pay the withheld employment taxes. The Tenth Circuit has defined the term "willfully" as "a voluntary, conscious and intentional decision to prefer other creditors over the Government. [citations omitted]. It does not require bad motive as in a criminal case." *Burden, supra,* at 304. Gray has admitted that he first knew that the withheld employment taxes had not been paid in February of 1979. Yet during that time, he not only knew that other creditors were being paid while the taxes remained delinquent but he wrote the checks for several such payments himself. Gray thus demonstrated the requisite "willfulness" necessary for liability under § 6672 for the 100 percent penalty assessment.

Gray contends that the "willfulmess" requirement has not been met in this case or that, at the least, an issue of fact remains. Gray asserts that the term "willfully" means without reasonable cause, citing *Feist v. United States,* 607 F.2d 954, 221 Ct.Cl. 531 (1979) and *Cushman v. Wood,* 149 F.Supp. 644 (D.Ariz.1956). Gray claims that during the last week of October of 1979, he had talked with the company accountant in regard to paying the delinquent taxes and had made out checks for their payment. However, before Gray could obtain the necessary co-signature on the checks, he was asked to resign as President of the corporation. This, Gray believes, demonstrates that he had reasonable cause, namely his forced resignation, which prevented him from paying the taxes. Gray then reasons that, since his failure to pay was not without reasonable cause, he did not "willfully" fail to pay the withheld employment taxes. Gray's argument is hopelessly flawed, both legally and logically.

First, the "reasonable cause" standard which Gray asks the Court to apply has been implicitly rejected by the Tenth Circuit. *Burden, supra,* at 304 (citing with approval *Monday, supra,* wherein the Seventh Circuit explicitly rejected the "reasonable cause" standard). Furthermore, even assuming that this Court should apply the "reasonable cause" standard, Gray's failure to pay was without reasonable cause.

Gray relies heavily upon the *Feist* case in asserting that his conduct does not meet the "willfulness" standard; curiously, the *Feist* case supports just the opposite conclusion. In *Feist,* the plaintiff had sold his business to a third party, after investigating their business reputations and finding them to be reliable. Just before the sale was to be closed, plaintiff learned that his business was delinquent on their deposits for employment taxes for the quarter ending later that month. Sufficient funds existed at the time in the business to pay the delinquent taxes. Plaintiff sought and received assurances from the buyer that the delinquent taxes would be paid immediately. The taxes were not paid and the United States sought to assess plaintiff a 100 percent penalty pursuant to § 6672. The court in the *Feist* case found the "willfulness" element not to have been met:

> Especially significant in the circumstances of this case is the fact, accepted by defendant in its motion for partial summary judgment, that plaintiff had no knowledge of [his business's] failure [to pay employment taxes] until just before closing. He could not "knowingly" have preferred creditors other than the Government prior to closing. Upon learning of the deficiency at the last minute, he did not knowingly sit silent or prefer other creditors, but instead did all he could reasonably do in the circumstances to see that the taxes were paid.

*Feist, supra,* at 962–963.

The very factors which led the court in *Feist* to find a lack of "willfulness" indicate in this case that the requisite "willful-

ness" is present. Gray knew of the tax delinquencies as of February of 1979 and yet those delinquencies were never paid. He personally paid other creditors while allowing the delinquent taxes to remain delinquent. The alleged last minute attempt to pay the taxes is, as the United States stated in its brief, "too little and too late."

Gray asserts, as a last resort, that if he is found to be liable under § 6672, the I.R.S. should apply the full amount recovered from the bankruptcy estate of G.W. to the 100 percent penalty assessment against Gray. This argument is frivolous. The I.R.S. may, absent a specific request by the taxpayer to allocate the funds in a particular way, allocate the funds to the corporation's unpaid tax liabilities in whatever way it feels appropriate. *See, e.g., Liddon v. United States*, 448 F.2d 509 (5th Cir.1971), *cert. denied* 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972); *Payne v. United States*, 500 F.Supp. 571 (D.Colo.1980). No such request was made in this case.

IT IS THEREFORE ORDERED that the motion by the United States for summary judgment is hereby granted.