**William A. KINNIE, Plaintiff and Counterclaim Defendant,**

v.

**The UNITED STATES of America, Defendant and Counterclaim Plaintiff,**

v.

**Barbara BERTOLLINI and Robert M. Blinstrub, Counterclaim Defendants.**

**Civ. A. No. 90–70728.**

United States District Court, E.D. Michigan, S.D.

Aug. 6, 1991.

George M. Malis, Chirco, Herrinton, Runstadler & Thomas, Troy, Mich., for plaintiff William A. Kinnie.

Mack D. Lansing, Trial Atty., Tax Div., U.S. Dept. of Justice, Washington, D.C., for defendant and counterclaim plaintiff U.S.

Kenneth Afton, Birmingham, Mich., for counterclaim defendant Barbara Bertollini.

Mayer Morganroth, Morganroth & Morganroth, Southfield, Mich., for counterclaim defendant Robert M. Blinstrub.

GADOLA, District Judge.

William A. Kinnie filed a complaint March 16, 1990, against the United States of America seeking recovery of penalties assessed and collected by the Internal Revenue Service ("IRS") pursuant to Section

6672 of the Internal Revenue Code of 1986. The government filed a counterclaim May 21, 1990, against plaintiff Kinnie and added Barbara Bertollini and Robert M. Blinstrub as counterclaim defendants. In its counterclaim, the government seeks judgments against plaintiff Kinnie in the amount of $136,292.76, against counterclaim defendant Bertollini for $137,892.76, and against counterclaim defendant Blinstrub for $133,545.93.

Counterclaim defendant Bertollini filed a motion for summary judgment April 29, 1991. The government filed a response May 15, 1991, along with a cross motion for summary judgment against Bertollini. Bertollini responded to the government's cross motion May 29, 1991, and the government filed a reply June 4, 1991.

The government filed a motion for summary judgment against plaintiff Kinnie and counterclaim defendant Blinstrub May 6, 1991. Blinstrub filed a response May 15, 1991, to which the government filed a reply June 6, 1991. Kinnie filed a response May 20, 1991, to which the government filed a reply May 30, 1991.

## BACKGROUND FACTS [1]

Plaintiff Kinnie and counterclaim defendant Blinstrub formed a corporation, Eastern Michigan Truck Sales, Inc. ("EMTS"), in 1982. The business purpose of the corporation was to lease, sell and service new and used trucks. The corporation operated under franchise or dealer agreements with Mercedes–Benz and Freightliner, Inc., and later with Isuzu Truck. Blinstrub was made president and Kinnie vice-president. Counterclaim defendant Bertollini was later hired by Blinstrub as secretary and treasurer. Blinstrub and Kinnie, investing equal amounts of money, were 50 percent owners and agreed that the corporation would be run as a 50/50 partnership.

Blinstrub, as general manager, ran the company on a day-to-day basis and admitted at deposition that he determined, along with Kinnie, which creditors to pay. He testified, in fact, that no payment was made to any creditor without his or Kinnie's prior approval. Kinnie contends that he was only an investor and that, as such, his only interest in the corporation was to get a return on his investment.

Beginning in 1985, EMTS began failing to pay to the IRS all of the income and Federal Insurance Contributions Act ("FICA") taxes withheld from the wages of its employees. Those delinquencies appeared on both the year end financial reports and the monthly financial reports sent to Mercedes–Benz, copies of which were provided to Blinstrub and Kinnie. In addition, Blinstrub testified that Bertollini informed both Blinstrub and Kinnie that there were insufficient funds to pay the payroll taxes. Blinstrub further testified that as a result of the corporation's insufficient funds, payroll tax checks were held in an office cabinet file along with Forms 941, Employer's Quarterly Tax Returns.

In his deposition Blinstrub stated that he and Kinnie met in person or discussed over the telephone the corporation's financial condition on a daily basis, including the payment of creditors and the payroll taxes. According to Blinstrub, he and Kinnie made joint decisions regarding which creditors to pay. The payroll taxes were not paid so that the business might continue operations. According to Blinstrub, the taxes went unpaid in anticipation that sufficient funds would be available in the future to pay the tax liability.

Blinstrub further testified that both he and Kinnie discussed the tax delinquency at least nine to twelve months prior to a $100,000.00 payment to the IRS in February 1987. Also, Blinstrub stated that he received and reviewed the monthly finance reports to Mercedes–Benz and the annual finance reports, both of which set forth the outstanding tax liabilities, and that he discussed both reports with Kinnie and their corporate accountant. During at least one of the meetings, the accountant informed both of them of the potential for personal liability, according to Blinstrub.

---

**1.** The facts are taken, with some revision, from the statement of facts submitted in the government's briefs in support of its motions for summary judgment.

Contrary to Blinstrub's testimony, Kinnie testified that he first learned of the unpaid payroll taxes in August or September 1986. Kinnie admits that he knew the corporation was required to pay withholding taxes, but he assumed that Blinstrub was taking care of the taxes. Kinnie testified that when he learned of the unpaid taxes, he requested that Blinstrub and the corporate accountant meet with the IRS. As a result of that November 1986 meeting, Kinnie personally guaranteed a loan for $100,000.00 which he used to pay the IRS in February 1987. Also in late 1986 Kinnie directed an accountant to review the corporate records for possible diversion of corporate funds by Blinstrub for personal or other improper use and directed Bertollini to make the corporate records available to the accountant.

In March 1987 Kinnie forced Blinstrub to leave the corporation, allegedly because lenders refused to provide capital to EMTS as long as Blinstrub was associated with EMTS. After Blinstrub left, Kinnie authorized each check that was made by EMTS to its creditors. Kinnie testified that he used his personal funds to pay creditors, payroll, and, at times, the IRS. Kinnie also obtained personal loans to pay creditors and payroll. Creditors paid by EMTS, with Kinnie's approval, included insurance companies, utility companies, landlords, and suppliers.

Kinnie testified that he closed EMTS in May 1987 because Mercedes–Benz and Freightliner refused to continue their dealer relationships with EMTS or any entity associated with Blinstrub. Subsequently, Kinnie initiated a new corporation by the name of Great Lakes Freightliner, Inc. ("Great Lakes"), which operated for the same business purpose, at the same address, with virtually the same employees [2] and customers as that of EMTS.

In addition, Great Lakes continued to operate as a franchise or dealer for Mercedes–Benz and Freightliner. Kinnie was the sole owner of Great Lakes. The assets, including inventory, of EMTS were taken over by Great Lakes; and before EMTS ceased to exist, it paid Great Lakes over $78,000.00. Great Lakes also used EMTS' VISA and MasterCard credit cards until it was issued those cards in its own name.

Kinnie personally borrowed money which he used in incorporating Great Lakes. None of those borrowed funds was used to pay the trust fund tax liability. In addition, Great Lakes paid creditors, suppliers and its payroll rather than the unpaid withholding taxes of EMTS. Kinnie knew of and allowed those payments to other creditors.

Bertollini was never an owner or director of EMTS. As secretary and treasurer, she maintained all of EMTS' financial and personnel records in her office. EMTS had not yet begun its actual operations at the time Blinstrub asked her to work for the corporation. Therefore, it was she, along with the corporate accountant and Kinnie and Blinstrub, who prepared EMTS' pro forma balance sheet, which was submitted to Freightliner and Mercedes–Benz.

Once EMTS began operations, Bertollini's responsibilities included preparing and issuing corporate checks, bookkeeping, supervising the accounting or finance department and handling creditors. As more employees were hired for the accounting office, Bertollini became office manager. Bertollini testified that as office manager she had the authority to hire and fire employees under her control.

Bertollini also testified that she had authority to sign and did sign checks on all corporate checking accounts. She stated that she would have signed the corporate resolution authorizing the opening of a bank account for the corporation. She further testified that there was no limitation placed on her by the bank, the corporation or its owners regarding her authority to sign checks on behalf of the corporation. Bertollini paid normal operating expenses, including payroll, C.O.D., or C.I.A. (cash in advance) without obtaining prior approval from either Blinstrub or Kinnie.

Bertollini further testified that as secretary/treasurer and office manager she was

**2.** Blinstrub was replaced by another general manager.

responsible for preparing all quarterly tax returns, both state and federal, including Form 941, Employer's Quarterly Tax Return, which set forth the withheld income and FICA taxes that were either paid during a specific quarter or were still owing. She also was responsible for preparing monthly financial statements to Freightliner and annual Form 940, Employer's Federal Unemployment Tax Return, and the Michigan Annual Report. In addition, she signed at least one loan (for the purchase of a vehicle) on behalf of the corporation and negotiated and signed contracts for group life and health insurance for EMTS employees.

The tax delinquencies appeared on the year end financial reports, the monthly financial reports sent to Mercedes–Benz, and Forms 941. Bertollini, having prepared all of these except the year end report, knew of the unpaid taxes. She testified that she always timely prepared a check for the payment of the withheld taxes. In addition, every quarter she timely prepared the Form 941 and a check for the outstanding tax liability shown on it. However, all of these checks and Forms 941 were not mailed to the IRS; instead, Bertollini, according to her deposition testimony, placed them in a corporate safe in her office.

## STANDARD OF REVIEW

■ Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment may be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." "A fact is 'material' and precludes grant of summary judgment if proof of that fact would have [the] effect of establishing or refuting one of the essential elements of the cause of action or defense asserted by the parties, and would necessarily affect [the] application of appropriate principle[s] of law to the rights and obligations of the parties. [Citation omitted]. *Kendall v. Hoover Co.*, 751 F.2d 171, 174 (6th Cir.1984) (quoting Black's Law Dictionary 881 (6th Ed.1979)). The Court must view the evidence in a light most favorable to the nonmovant as well as draw all reasonable inferences in the nonmovant's favor. *See United States v. Diebold, Inc.*, 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Bender v. Southland Corp.*, 749 F.2d 1205, 1210–11 (6th Cir.1984).

■ The movant bears the burden of demonstrating the absence of all genuine issues of material fact. *See Gregg v. Allen–Bradley Co.*, 801 F.2d 859, 861 (6th Cir.1986). The initial burden on the movant is not as formidable as some decisions have indicated. The moving party need not produce evidence showing the absence of a genuine issue of material fact. Rather, "the burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party discharges that burden, the burden shifts to the nonmoving party to set forth specific facts showing a genuine triable issue. Fed.R.Civ.P. 56(e); *Gregg*, 801 F.2d at 861.

■ To create a genuine issue of material fact, however, the nonmovant must do more than present some evidence on a disputed issue. As the United States Supreme Court stated in *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986),

> There is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the [nonmovant's] evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249–50, 106 S.Ct. at 2511. (Citations omitted); *See Catrett*, 477 U.S. at 322–23, 106 S.Ct. at 2552–53; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986). The standard for summary judgment mirrors the standard for a directed verdict under Fed.R.Civ.P. 50(a).

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511. Consequently, a nonmovant must do more than raise some doubt as to the existence of a fact; the nonmovant must produce evidence that would be sufficient to require submission to the jury of the dispute over the fact.

## APPLICABLE LAW

### I. RESPONSIBLE PERSON DEFINED

■ Sections 3102(a) and 3402(a) of the Internal Revenue Code, Title 26 of the United States Code, require an employer to deduct and withhold income and social security taxes from the wages paid to its employees. Section 7501 of the Code provides that the withheld taxes shall be retained by the employer as a special trust fund for the benefit of the United States. These trust fund taxes are for the exclusive use of the United States and are not to be used to pay the employer's business expenses, including salaries, or used for any other purpose. *Gephart v. United States,* 818 F.2d 469 (6th Cir.1987); *Mueller v. Nixon,* 470 F.2d 1348, 1351 (6th Cir. 1972), *cert. denied,* 412 U.S. 949, 93 S.Ct. 3011, 37 L.Ed.2d 1001 (1973); *Taubman v. United States,* 499 F.Supp. 1133, 1142 (E.D.Mich.1978). Thus, a fiduciary duty is imposed regardless of whether the taxes are actually segregated and treated as trust res. 26 U.S.C. §§ 3102(b), 3403, 7501(a).

Once the federal income and social security taxes have been withheld from an employee's wages, the United States is required to credit the amount withheld against the employee's individual income tax liabilities, regardless of whether such taxes are actually paid to the United States and even though the credits may result in refunds to employees based on taxes which the United States has never actually received. 26 U.S.C. § 31(a), Treas.Reg. § 1.31–1(a). Thus, the government suffers a loss of revenue when the trust fund taxes are not remitted by the employer.

Section 6672 of the Internal Revenue Code was enacted to protect the United States against such losses by providing it with another source from which to collect the withheld taxes. It provides that "[a]ny person required to collect, truthfully account for, and pay over any tax imposed by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, ... shall ... be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over." 26 U.S.C. § 6672. "[E]ven though § 6672 is characterized by the Internal Revenue Code as a penalty, it may be more accurately described as a mechanism for shifting tax of the corporation to those responsible for its payment." *Waghalter v. United States,* 79–2 U.S.T.C. Par. 9717, 1979 WL 1498 (S.D.Tex.1979).

■ In litigation involving an assessment under § 6672, the taxpayer must prove, by a preponderance of the evidence, that he does not owe the tax assessed by the government. *Collins v. United States,* 848 F.2d 740, 742 (6th Cir.1988). This burden rests with the taxpayer whether or not the taxpayer is the plaintiff or a counterclaim defendant. *Id.*

■ In order for a person to be liable under § 6672, two factors must exist:

(1) he must have been a person required to collect, truthfully account for and pay over the withheld taxes; and

(2) he must have willfully failed to pay over the withheld taxes.

*See, e.g., Gephart* at 473; *Monday v. United States,* 421 F.2d 1210, 1216 (7th Cir.), *cert. denied,* 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); *Braden v. United States,* 442 F.2d 342 (6th Cir.1970) *cert. denied sub nom., Bonistall v. Braden,* 404 U.S. 912, 92 S.Ct. 229, 30 L.Ed.2d 185 (1971).

"Liability [as a "responsible person" to whom § 6672 applies] is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances." *Gephart* at 473. As stated in the Seventh Circuit's opinion in *Monday:*

Liability attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government.... This duty is gener-

ally found in high corporate officials charged with general control over corporate business affairs who participate in decisions concerning payment of creditors and disbursal of funds.

*Monday* at 1214–1215. The Sixth Circuit in *Gephart* stated the following test for determining responsibility:

> ... the test for ... responsibility ... is essentially a functional one, focusing upon the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors.

*Gephart* at 473. That is, "[r]esponsibility for purposes of § 6672 is a matter of status, duty, and authority." *Id.* at 475.

■ Courts have recognized a dichotomy between persons who have inherent or ultimate control, such as owners, officers and/or directors, and persons who do not have ultimate control but still exercise significant control over the corporation's finances. *See, e.g., United States v. Burger*, 717 F.Supp. 245, 248 (S.D.N.Y.1989) ("The requisite duty for liability under § 6672 may arise either from titular authority or from actual management of corporate finances. [C]lear titular authority is generally sufficient ... [citations omitted].") Persons having inherent, titular or ultimate authority are responsible as a matter of law. *Gephart, supra.* These persons are high corporate officials, who by their very position in the corporation have general control over the finances of the corporation. *Monday, supra; United States v. Hill*, 368 F.2d 617, 621 (5th Cir.1966) (They are "so connected with a business as to be in a position to exercise full authority over financial affairs.") With respect to person having ultimate control, i.e., owners, officers and/or directors, the test for responsibility recognizes that person's inherent authority to exercise financial control over the corporation, whether he exercises that authority or not. *Thomsen v. United States*, 887 F.2d 12 (1st Cir.1989); *Liddon v. United States*, 448 F.2d 509, 512–513 (5th Cir.1971); *Mueller, supra.* Therefore, certain individuals within any corporation are deemed to have inherent or intrinsic authority regardless of their ostensible duties. As such, these persons are liable as a matter of law.

The Sixth Circuit has referred to these persons as having ultimate authority. *Gephart* at 473 ("Generally, such a person is one 'with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes, or more explicitly, one who has authority to direct payment of creditors.'"). "It has been noted by more than one court that one who is the founder, chief stockholder, president and member of the board of directors or a corporation should be presumptively presumed to be a person responsible under § 6672 for the collection and payment of employee withholding taxes." *Turner v. United States*, 59 A.F.T.R.2d Par. 87–467 (W.D.Mich.1987) (citations omitted).

In *Thomsen, supra,* the Court of Appeals for the First Circuit affirmed a district court's directed verdict against the plaintiff and found him liable as a matter of law. Thomsen was a 45% shareholder of a corporation which owned 50% of the shares of the corporation that had failed to pay over its trust fund taxes. He was also an officer and director of the delinquent corporation. Plaintiff argued that he as not assigned, nor did he actually undertake, any duties involving financial matters of the corporation. The other owner, as the person in charge of the day-to-day operations, performed all financial duties, including payment of creditors, payroll and taxes. In addition, Thomsen argued that he had ceased performing even his non-financial duties because he was employed full-time at another corporation during the time the trust fund taxes were not turned over to the United States. Thomsen further testified that he was continuously assured by the other owner that all taxes were paid.

In holding the plaintiff liable, both the district court and the court of appeals found that the plaintiff had at all times in his dealings with the other owner acted as an equal partner. Further, Thomsen had

authority to sign checks, had access to the corporate books, and was an officer in the corporation. The fact that the plaintiff spent no time with the delinquent corporation was not a defense, since "delegation will not relieve one of responsibility; liability attaches to all those under the duty set forth in the statute." *Thomsen* at 17.

Courts have recognized ultimate or inherent authority in owners, officers and directors as follows:

> The benefits conferred by management and ownership ..., control and profit participation, gave rise to corresponding responsibilities. One of these responsibilities was to "collect, account for and pay over" trust fund taxes of the IRS.

*In re Cotten*, 56 A.F.T.R.2d Par. 85–5420 (E.D.Tex.1984) (50% owner, incorporator, officer, director, with authority to sign checks, held responsible); *Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979) (Court affirmed summary judgment against the officers and directors of corporation even though they had relied on a general manager to pay taxes); *Landau v. United States*, 702 F.Supp. 199 (N.D.Ill.1988) (court granted summary judgment against founder and president who had authority to sign checks even though another officer admitted in his affidavit that he was solely responsible for ensuring taxes were paid; the court observed that as owner and president, plaintiff was entitled to greatest share of the profits); *Genins v. United States*, 489 F.2d 95 (5th Cir.1974) (50% shareholder with check signing authority, and who withdrew corporate funds to pay off loan of another corporation to his wife, found liable even though he did not have duty to pay payroll or, ostensibly, the taxes); *Turner, supra*, Par. 87–467, 87–874.

In *Turner* the court granted the government's motion for summary judgment. Applying the factors set forth in *Braden*, the court found that plaintiff Turner was the sole incorporator and shareholder of the corporation, as well as an officer and director who had authority to sign checks. The court noted there was no proof that plaintiff exercised his inherent authority as an owner to hire or fire employees. Plain-

tiff had secured the financing of the corporation and hired another individual to run the day-to-day business operations. In finding the plaintiff liable, the court stated,

> Regardless of the fact that he did not run the daily operations of his business, he exercised control.... This control is evidenced by the fact that he retained technical, formal control over the corporations through his position as sole shareholder, director and officer. However, his role was not a mere matter of form; he took active participation in important financial decisions of both corporations.

*Turner* at 87–874.

In the case of a person who does not have ultimate authority, the central question in determining whether he is a "responsible person" is whether that person had significant control over the finances of the corporation. *Hochstein v. United States*, 900 F.2d 543, 547 (2d Cir.1990); *Gephart* at 475. Therefore, liability under § 6672 is not limited to the person or persons having ultimate fiscal control, but it encompasses all persons having significant control over the disbursement of funds. "Liability attaches to those with power and responsibility within the corporate structure for seeing that the taxes withheld from various sources are remitted to the Government...." *Monday* at 1214–1215. In *Gephart* the Sixth Circuit held that

> More than one person can be a responsible officer of a corporation. [citation omitted.] Essentially, liability is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances [citation omitted].

*Gephart* at 473.

■ Among the factors relied upon by the courts to determine whether individuals are persons who exercise significant control and are, therefore, responsible for the payment of taxes withheld from employees' wages are the following:

(1) The identity of the officers, directors and stockholders of the corporation and their duties;

(2) The ability to sign checks of the corporation;

(3) The identity of the individuals who hired and fired employees; and

(4) The identity of the individuals who were in control of the day to day financial affairs of the corporation.

*Gephart* at 473; *Braden v. United States*, 318 F.Supp. 1189, 1194 (S.D.Ohio 1970).

In addition, to be deemed a "responsible person" for the purposes of § 6672, it is not necessary that a person be the one who actually prepared the tax returns, kept the books and records, paid the wages, or withheld the taxes. *Hartman v. United States*, 538 F.2d 1336 (8th Cir.1976); *Genins v. United States*, 489 F.2d 95, 96 (5th Cir.1974).

In *Hochstein* the Second Circuit found that

While Hochstein was not an officer or director and had no authority to hire and fire employees, he did exercise significant control over [the corporation's] finances. He had the authority to sign checks in any amount; he signed and filed [the corporation's] payroll tax returns; he dealt with Rosenthal on a daily basis during [the corporation's] financial troubles; and he oversaw [the corporation's] bookkeeping.

\* \* \* \* \* \*

The record indicates that, in addition to Hochstein's check-signing authority, he made the initial determination of the order in which large bills were to be paid subject to President Eckstein's approval, and that he had discretion to pay smaller bills.... Bearing in mind that Hochstein had the burden of proof on this issue, we conclude that he was a responsible person. [Footnote and citations omitted.]

*Hochstein* at 547.

## II. WILLFULNESS DEFINED

■ In addition to requiring a finding of responsibility, § 6672 imposes a penalty only upon those who "willfully" fail to pay over the taxes withheld from the employees of the corproation. "Willfully" does not mean that the responsible person acted by virtue of a bad motive or the specific intent to defraud the government or to deprive it of revenue. *See Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). "Willfully" means merely that the responsible person "had knowledge of the tax delinquency and knowingly failed to rectify it when there were available funds to pay the Government." *Gephart*, at 475; *Braden* at 344 ("If the [defendant] was aware of the fact that the taxes were unpaid, and, possessing the power and responsibility to pay them, failed to do so, then he is liable for the penalty of Section 6672 notwithstanding his lack of malice or wrongful purpose."). As succinctly put by the First Circuit, "that [the assessee] willfully preferred other creditors to the United States, [is] all that is required under the statute." *Harrington v. United States*, 504 F.2d 1306, 1313 (1st Cir.1974) (citing cases from other circuits).

Knowledge of and the failure to pay the liability when the corporation had funds to do so is all that is necessary to establish willfulness as a matter of law. *See Calderone*, at 259–260. It is irrelevant that the funds available were disbursed in order to keep the corporation in business. Even the payment of salaries and wages constitutes willful conduct if the wages and salaries were paid at a time when the corporation was delinquent in paying over withheld taxes. *See Collins* at 741.

The Sixth Circuit, in holding the taxpayer liable as a matter of law for willful failure to pay over withheld taxes, noted in *Collins:*

It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern—the government cannot be made an unwilling partner in a floundering business.... A responsible person who makes a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than make tax payments, is liable for willful failure.

*Collins* at 741–742.

Furthermore, "... evidence that the responsible person had knowledge of payments to other creditors after he was aware of the failure to pay withholding tax

is sufficient for summary judgment on the question of willfulness." *Howard v. United States*, 711 F.2d 729, 735 (5th Cir.1983). Courts have also determined that one who acts with "a reckless disregard for obvious or known risks will be considered to have acted 'willfully' for purposes of Section 6672." *First America Bank and Trust Co. v. United States*, 79–1 U.S.T.C. Par, 9205m at 86m370 (W.D.Okla.1979), citing *Sorenson v. United States*, 521 F.2d 325 (9th Cir.1975); and *Monday, supra.*

In *Schwinger v. United States*, a district court found that

> Plaintiff ... was aware of the delinquencies, but by his own admissions he continued to rely on the hospital's executive director to make tax payment, and even as the hospital's fiscal difficulties mounted, he did not discuss or seek any information regarding the matter. Thus, even though the plaintiff did not know that the payment schedule was not being met, [footnote omitted] his failure to investigate or to correct mismanagement after having notice that withholding tax delinquencies existed constitutes willful conduct for purposes of [S]ection 6672.

*Schwinger v. United States*, 652 F.Supp. 464, 470 (E.D.N.Y.1987).

### APPLICATION OF THE LAW TO COUNTERCLAIM DEFENDANT BLINSTRUB

■ There is no question that with respect to counterclaim defendant Blinstrub, both factors exist to impose § 6672 liability. First, Blinstrub was a person required to collect, truthfully account for and pay over the withheld taxes. Second, Blinstrub willfully failed to pay over the withheld taxes. Blinstrub's own deposition testimony is critical to both determinations.

Blinstrub had admitted that he was president and general manager in charge of running the day-to-day business operations of the delinquent corporation. He and plaintiff Kinnie had contributed equally in the corporation's initial investment and were 50/50 partners. In addition, Blinstrub testified that he did most of the negotiating for the corporation, signed at least one of the dealership agreements, directed which creditors to pay, and signed corporate checks. By his own testimony Blinstrub unquestionably was a person possessing more than sufficient influence and control over EMTS' financial affairs to make him one required to collect, account for and pay over the withheld taxes.

Likewise, it is clear from Blinstrub's deposition testimony that he willfully failed to pay over the withheld taxes. Blinstrub testified that the taxes went unpaid in order to keep the business operating. In addition, Blinstrub testified that he met with Kinnie to discuss which creditors to pay and that they discussed the tax delinquency nine to twelve months prior to a $100,000.00 payment to the IRS in February 1987. Blinstrub further testified that he received and reviewed the monthly and annual financial reports, both of which set forth the outstanding tax liability. Also, Blinstrub directed payments to creditors other than the IRS. The court finds that according to his own deposition testimony, Blinstrub willfully failed to pay over the withheld taxes.

■ In his response Blinstrub failed to allege any genuine issues of material fact regarding his responsibility or willfulness under 26 U.S.C. § 6672. However, Blinstrub presented two reasons why summary judgment as to his liability should be denied. First, Blinstrub contends that discovery was incomplete at the time the government's motion for summary judgment was filed. Second, Blinstrub asserts that there remains a genuine issue of material fact.

According to the court's scheduling order, April 30, 1991 was the discovery cutoff date. The government filed its motion for summary judgment May 6, 1991. Although at the time of filing there were two depositions that had yet to be taken, both were ordered by the government and were to cover a time period after Blinstrub's association with EMTS had terminated. Therefore, testimony from those depositions would have no bearing on a determination of Blinstrub's responsibility or willfulness.

In his response Blinstrub further contends, "there is a genuine issue of material fact as to whether [EMTS], in fact, paid the trust fund deficiency to the IRS, but the IRS misallocated said payments." Blinstrub asserts that in February 1987 EMTS' certified public accountant, William Thompson, paid $100,000.00 by delivery to IRS officer Peter Smisick with specific instructions that it be applied to interest, penalties, and taxes for the trust fund obligation. USA does not dispute that the money was paid to the IRS; rather, USA contends that it was not applied to the trust fund obligation because it was undesignated as to its application.

When a taxpayer makes a voluntary payment to the IRS, the taxpayer is entitled to designate the tax liability to which the payment will be applied. *See United States v. Energy Resources, Inc.*, 90–1 U.S.T.C. Par. 50, 281 (1990); *Ribs–R–Us v. United States*, 828 F.2d 199 (3d Cir.1987); *Muntwyler v. United States*, 703 F.2d 1030, 1032 (7th Cir.1983); Rev.Rul. 79–284, 1979–2 C.B. 832. If a taxpayer makes a voluntary payment without contemporaneously designating how the payment should be applied, the IRS may determine how the payment is applied. *See Muntwyler* at 1032 ("[i]f the taxpayer makes a voluntary payment without directing the application of the funds, the Internal Revenue Service may make whatever allocation it chooses."); *Liddon v. United States*, 448 F.2d 509, 513 (5th Cir.1971), *cert. denied*, 406 U.S. 918, 92 S.Ct. 1769, 32 L.Ed.2d 117 (1972).

In the case of employment taxes, the government asserts that it is the IRS' policy to apply undesignated voluntary payments from a corporation first to the employer's portion of the tax liability and then to the trust fund taxes that are withheld from the employees' wages. IRS Policy Statement P–5–60 provides the following:

> In determining the amount of the 100 percent penalty to be assessed in connection with employment taxes, any payment made on the corporate account involved is deemed to represent payment of the employer portion of the liability (including assessed and accrued penalty and interest) unless there was some specific designation to the contrary by the taxpayer. The taxpayer, of course, has no right of designation in the case of collections resulting from enforced collection measures. To the extent partial payments exceed the *employer* portion of the tax liability, they are considered as being applied against the trust fund portion of the assessment.

> 1 Administration, CCH Internal Revenue Manual at 1305–1315 (Mar.1981) (emphasis in original). *See also, Payne v. United States*, 500 F.Supp. 571, 573 (D.Colo.1980). Consistent with this policy, Rev.Rul. 79–284, 1979–2 C.B. 83 was promulgated. It holds that a prior revenue ruling (Rev.Rul. 73–305, 1973–2 C.B. 43) now applies to the voluntary partial payment of employment taxes. Rev.Rul. 73–305 was specifically held inapplicable to the partial voluntary payment of employment taxes. *Payne v. United States, supra.* Rev.Rul. 79–284 states that "where the taxpayer provides *specific written instructions* for the application of a voluntary partial payment" of employment taxes, that written designation will be honored. (emphasis added). The ruling also states that "if no designation is made by the taxpayer, the Internal Revenue Service will allocate partial payments of withheld employment taxes … to tax penalty or interest in a manner serving its best interest."

Based on Revenue Ruling 79–284, any oral designation made by Mr. Thompson, or any other representative of EMTS, when the $100,000.00 payment in February 1987 was made to the IRS did not constitute a proper designation.[3] Revenue rulings "are entitled to great deference and have been said to 'have the force of legal precedents unless unreasonable or inconsistent with the provisions of the Internal Revenue Code.'" *Amato v. Western Union Intern, Inc.*, 773 F.2d 1402, 1411 (2d Cir.1985) (quoting *Dunn v. United States*, 468

---

3. USA asserts that it applied $50,022.89 to the trust fund portions of EMTS' unpaid payroll tax liability. Exhibit C to USA' Response to Plaintiff's Interrogatories.

F.Supp. 991, 993 & fn. 10 (S.D.N.Y.1979); *Certified Stainless Services, Inc. v. United States*, 736 F.2d 1383 (9th Cir.1984) (courts must give deference to revenue ruling provisions).

In addition, the rule that a designation of a partial voluntary payment of employment taxes can be effective only if it is in writing is supported by public policy. It would be almost impossible for either party to confirm or deny any alleged oral designations. Furthermore, a written designation places no heavy burden on a taxpayer, for such a designation could be easily noted on the check or in written correspondence accompanying the check.

Considering the facts in the instant case in a light most favorable to the nonmovant, the court finds that summary judgment is proper as to counterclaim defendant Blinstrub's liability.

## APPLICATION OF THE LAW TO PLAINTIFF KINNIE

█ There is no question that with respect to plaintiff/counterclaim defendant Kinnie, both factors exist to impose § 6672 liability. First, Kinnie was a person required to collect, truthfully account for and pay over the withheld taxes. Second, Kinnie willfully failed to pay over the withheld taxes.

Kinnie admits that he was vice-president, co-founder, and 50% owner of EMTS. There is no dispute that he and Blinstrub contributed equally to the corporation's initial investment. Kinnie, like Blinstrub, had check signing authority. Kinnie also possessed significant control over the corporation's financing by having authority to order secretary/treasurer Bertollini to turn over the corporate books to an accountant. Furthermore, Kinnie had sufficient authority to later replace Blinstrub with another general manager.

In his response brief Kinnie contends that he was merely a "silent investor" in the corporation, leaving the day-to-day operations to Blinstrub. To support his contention that he was not "responsible" for collecting, accounting for and paying over the withheld taxes, Kinnie argues that his only interest in the corporation was to "obtain a return on his investment." As discussed in the aforementioned case law, however, it is clear that participating in the profits of the corporation as an owner constitutes responsibility. In addition, Kinnie had the authority to investigate the corporate finances, to force Blinstrub out of the corporation, and to pay the delinquent taxes. Even if Kinnie could successfully argue that he did not have ultimate authority, there is no question that he did possess significant control over the disbursement of funds to impose § 6672 liability.

Kinnie further contends that he did not discover the unpaid taxes until August 1986; and therefore, his failure to pay the withheld taxes cannot be willful. Assuming *arguendo*, Kinnie's argument that he did not and should not have discovered the unpaid taxes until August 1986, Kinnie is still willful as a matter of law. Kinnie does not contest the fact that more than $500,-000.00 went through EMTS' bank accounts between August 1986 and July 1987. That is, more than three times the funds necessary to pay the entire trust fund liability went through EMTS accounts between those dates, a time during which Kinnie knew there were outstanding taxes to be paid. Kinnie is willful as a matter of law, as he did not use those funds to pay off the delinquent trust fund taxes. *Mazo v. United States*, 591 F.2d 1151 (5th Cir.1979), *cert. denied sub nom. Lattimore v. United States*, 444 U.S. 842, 100 S.Ct. 82, 62 L.Ed.2d 54 (1979); *Garsky v. United States*, 600 F.2d 86 (5th Cir.1979).

█ Furthermore, according to the above-cited case law, the test for willfulness is not actual knowledge. The Court of Appeals for the Sixth Circuit has held that reckless disregard of the fact that payroll taxes were going unpaid also constitutes willfulness. *Calderone* at 259, 260. In the instant case, Kinnie does not contest that he received the monthly financial reports, that Bertollini informed him of the business' failing condition or that checks were being returned with the notation of not sufficient funds. Kinnie admits that he knew that Blinstrub was under

criminal investigation either at the end of 1985 or the beginning of 1986; however, Kinnie states that he did not investigate the corporation's finances to determine whether the taxes were being paid until August 1986.

Kinnie states that up until August 1986 he "assumed that Blinstrub was taking care of the taxes." Kinnie Response Brief at 3. However, Kinnie cannot delegate the fiduciary responsibility imposed upon him by § 6672. *Thomsen, supra.* These admissions by Kinnie constitute a reckless disregard of whether the payroll taxes were going unpaid.

Another issue of material fact alleged by Kinnie is whether he "act[ed] responsibly when he immediately conducted an investigation of EMTS when he first learned that there were unpaid payroll taxes in August 1986." Plaintiff has misinterpreted the case law to mean that one in his position must prove that he acted responsibly. In fact, the case law states that he must prove he is not a person responsible for collecting, accounting for and paying over the withheld taxes.

The final point Kinnie raises as an issue of material fact is whether the $100,000.00 payment in February 1987 was properly designated to be applied against the trust fund portion of EMTS' liability. This is discussed in the portion of this opinion regarding counterclaim defendant Blinstrub and needs no further discussion.

Considering the facts in a light most favorable to the nonmovant, the court finds that summary judgment is proper as to plaintiff/counterclaim defendant Kinnie's liability.

## APPLICATION OF THE LAW TO COUNTERCLAIM DEFENDANT BERTOLLINI

There is no question that with respect to counterclaim defendant Bertollini, both factors exist to impose § 6672 liability. First, Bertollini was a person required to collect, truthfully account for and pay over the withheld taxes. Second, Bertollini willfully failed to pay over the withheld taxes. Bertollini's deposition testimony and the admissions in her pleadings are critical to both determinations.

Bertollini has admitted that she was secretary/treasurer and office manager of the delinquent corporation. She had check signing authority, as she admits to writing "many of the checks in payment of outstanding obligations of the corporation." Bertollini Brief in Support of Motion for Summary Judgment at 4. Furthermore, it was Bertollini who prepared the tax returns for the payroll taxes, and "without exception she prepared all of the checks in payment of payroll tax liability, many of which checks were signed by her ..." Bertollini Brief in Support of Motion for Summary Judgment at 4.

Bertollini alleges that her motion for summary judgment is proper because she did not have ultimate authority to determine which creditors would be paid. The law relied upon by Bertollini in her motion, however, is not the law of the Sixth Circuit. In *Gephart* the Sixth Circuit stated, "It is not necessary that an individual have the final word as to which creditors should be paid in order to be subject to liability under this section. Rather, it is sufficient that the person have significant control over the disbursement of funds." *Gephart* at 475. Applying the Sixth Circuit case law to Bertollini's admissions, it is clear that she did, in fact, possess such significant control.

In her motion for summary judgment, Bertollini also relies on cases from other circuits that have found a person not liable for § 6672 liability if he merely followed the orders of a superior. Again, this is not the law of the Sixth Circuit. In *Gephart* the court of appeals commented, "It is generally held that one who is a responsible person follows the directions of a superior not to pay withholding taxes to the government at his peril." *Gephart* at 475. The court went on to quote a case from the Fifth Circuit, *Howard v. United States,* 711 F.2d 729 (5th Cir.1983), which stated, "While we appreciate the difficulty of his position [deciding whether to follow the orders of his superior not to remit the tax payments to the government], we cannot condone his abdication of the responsibility imposed upon him by law." *Howard* at 734.

In her response to the government's cross motion for summary judgment, Bertollini incorporates the briefs filed by plaintiff/counterclaim defendant Kinnie and counterclaim defendant Blinstrub. Those points have been fully addressed by the court..

Considering the facts in the instant case in a light most favorable to Bertollini, the court finds that summary judgment is proper as to counterclaim defendant Bertollini's liability.

### ORDER

NOW, THEREFORE, IT IS HEREBY ORDERED that defendant/counterclaim plaintiff United States' motion for summary judgment against plaintiff/counterclaim defendant Kinnie and counterclaim defendant Blinstrub is GRANTED.

IT IS FURTHER ORDERED that defendant/counterclaim plaintiff United States' motion for summary judgment against counterclaim defendant Bertollini is GRANTED.

IT IS FURTHER ORDERED that counterclaim defendant Bertollini's motion for summary judgment is DENIED.

IT IS FURTHER ORDERED that defendant/counterclaim plaintiff United States submit a judgment for the court's approval within ten (10) days of this order.