George D. HARTMAN, Jr., Appellant,

v.

UNITED STATES of America, Appellee.

No. 75–1698.

United States Court of Appeals, Eighth Circuit.

Submitted April 14, 1976.

Decided July 30, 1976.

Anthony J. Sestric, St. Louis, Mo., for appellant.

William M. Brown, Jr., Atty. Tax Div., Dept. of Justice, Washington, D. C., for appellee; Donald J. Stohr (former U. S. Atty.; effective May 15th, Barry A. Short, U. S. Atty.), St. Louis, Mo., Scott P. Crampton, Asst. Atty. Gen., Gilbert E. Andrews and Michael L. Paup, Attys., Tax Div., Dept. of Justice, Washington, D. C., on brief.

Before GIBSON, Chief Judge, HENLEY, Circuit Judge, and MEREDITH, Chief District Judge.*

HENLEY, Circuit Judge.

This is a federal tax refund case in which George D. Hartman, Jr., plaintiff below, appeals from a judgment of the United States District Court for the Eastern District of Missouri.[1]

The litigation arises from the fact that with respect to the first two calendar quarters of 1970 Archway Erection Company (Archway), a Missouri corporation, failed to account for and pay over to the government sums withheld from the wages of employees as required by the Federal Insurance Contributions Act, 26 U.S.C. §§ 3101 *et seq.* and by the federal income tax laws.[2] The withholdings of Archway for the first two quarters of 1970 amounted to approximately $31,000.00. Returns for both quarters were filed belatedly, but the withholdings due the government were not paid. Archway ceased to do business in the late summer or fall of 1970. Subsequently, the government was able to levy upon certain accounts receivable and corporate assets, and the proceeds of the levy and sale were applied to withholdings attributable to the third quarter of 1970 which had not been paid over.

---

* The Honorable James H. Meredith, Chief Judge, United States District Court for the Eastern District of Missouri, sitting by designation.

1. The Honorable H. Kenneth Wangelin, United States District Judge.

2. The Internal Revenue Code and applicable Treasury Regulations require employers to withhold from the wages of employees FICA contributions and income taxes. An employer is required to account for his withholdings on a quarterly basis using in that connection IRS Form 941; generally, the employer will make his remittances when he files his quarterly returns. However, in instances an employer may be required to make monthly payments into a designated federal depository. *See* 26 U.S.C. §§ 3101, 3102, 3401, 3402, 3403 and 6302(a) and (c). *See also* Federal Tax Regulations §§ 31.6011(a)–4, 31.6011(a)–5, 31.6151–1(a) and 31.6302(c)–1.

From the date of the incorporation of Archway in 1966 plaintiff was its president and treasurer and held 20% of its capital stock. M. A. Steinback, who is not involved in the litigation, was the company's vice president and secretary, and he owned 20% of the stock of the company. The majority of the stock, 60%, was owned by J. I. Tipton, but for a reason that will be stated Tipton was not a corporate officer or a member of the corporation's board of directors.[3]

As to the quarters in question, the Commissioner of Internal Revenue, acting, of course, through subordinate officials of the Internal Revenue Service, assessed against plaintiff and Tipton personally the 100% penalty prescribed by 26 U.S.C. § 6672.[4]

Plaintiff made a token payment with respect to each of the two quarters and filed a timely claim for refund.[5] No action having been taken on that claim within six months, plaintiff commenced this action in the district court on May 3, 1974. The government denied that plaintiff was entitled to a refund of the token payments and filed a counterclaim to recover the unpaid balance of the assessment.

Subsequently, the government, as authorized by Fed.R.Civ.P. 13(h), filed an additional counterclaim against Tipton. Tipton entered no appearance, and the government moved for a default judgment against him.

That motion was granted and default judgment against Tipton was entered on the first day of the trial of the issues between plaintiff and the government.

In the course of the trial, which was before a jury, both sides moved at appropriate times for a directed verdict on which motions ruling was reserved. The case went to the jury, and the jury found the issues in favor of the government. Plaintiff moved for judgment notwithstanding the verdict, or, alternatively, for a new trial. Final judgment was entered on the verdict and this appeal followed.

For reversal, plaintiff contends principally that the case should not have gone to the jury, and that the district court erred in overruling his motion for judgment notwithstanding the verdict. Plaintiff also complains of alleged errors committed in the course of the trial, and on the basis of those asserted errors he contends that he is at least entitled to a new trial.

I.

As heretofore noted, employers are required to withhold from the wages of employees contributions owed by them under the Federal Insurance Contributions Act and federal income taxes, to periodically account for the withholdings, and to pay them over to the government. 26 U.S.C. § 7501 provides that withholdings from em-

---

3. The record reflects that Archway was a very loosely structured corporation, and that practically no attention was paid to corporate procedures. It is not clear whether any stock certificates were ever issued; no formal meetings of stockholders or of the board of directors were ever held, and there seem to have been no formal elections of officers.

4. Section 6672 must be read in connection with § 6671(b). The texts of the two sections are as follows:

*Section 6671(b):*
   The term 'person,' as used in this subchapter, includes an officer or employee of a corporation, or a member or employee of a partnership, who as such officer, employee, or member is under a duty to perform the act in respect of which the violation occurs.
*Section 6672:*
   Any person required to collect, truthfully account for, and pay over any tax imposed

by this title who willfully fails to collect such tax, or truthfully account for and pay over such tax, or willfully attempts in any manner to evade or defeat any such tax or the payment thereof, shall, in addition to other penalties provided by law, be liable to a penalty equal to the total amount of the tax evaded, or not collected, or not accounted for and paid over. No penalty shall be imposed under section 6653 for any offense to which this section is applicable.

5. In *Kelly v. Lethert,* 362 F.2d 629, 635 (8th Cir. 1966), we pointed out that in cases in which a § 6672 assessment is made it is the practice of the government to accept a token payment on the assessment and a claim for refund of that payment. If the refund claim is denied, the taxpayer may file suit to recover the token payment, and the government files a counterclaim for the unpaid balance. That procedure was followed in this case.

ployee wages constitute a trust fund in favor of the government. When wages are withheld from an employee by an employer, his tax liabilities are credited with the withholdings, and it makes no difference to him whether the employer ever settles with the government. *Kelly v. Lethert*, 362 F.2d 629, 632–33 (8th Cir. 1966).

Thus, if an employer does not pay over the withholdings to the government, and if the government cannot collect the amount of withholdings from the employer or from some other source, the withheld taxes are simply lost to the government. *Kelly v. Lethert, supra; see also* the leading case of *Bloom v. United States*, 272 F.2d 215 (9th Cir. 1959), *cert. denied*, 363 U.S. 803, 80 S.Ct. 1236, 4 L.Ed.2d 1146 (1960).

The great majority of employers faithfully account for and pay over the taxes withheld from employees. Not infrequently, however, and particularly when the business of the employer is in a precarious financial position or when it is short of cash funds, an employer will not pay over the withheld funds and will use them for working capital or to pay other creditors, often in the hope that better times will come and that the withholdings can eventually be paid over along with interest and an ordinary civil penalty for delinquency in payment. As will be seen, that happened in this case.

If a corporate employer defaults with respect to sums withheld by it, a corporate officer or employee may be liable personally for the penalty prescribed by § 6672, which is generally called the "100% penalty," if during the period involved he was a "responsible person" under § 6671(b), and if he acted "willfully" in respect of the tax liability of the employer.

■ While § 6672's imposition is called a "penalty," it is well established that it is not a penalty in any criminal sense of the term. It is civil in nature and is merely a means whereby the government can collect from a corporate officer or employee the taxes that the corporate employer withheld and should have accounted for and paid over. *Kalb v. United States*, 505 F.2d 506

(2d Cir. 1974), *cert. denied*, 421 U.S. 979, 95 S.Ct. 1981, 44 L.Ed.2d 471 (1975); *Monday v. United States*, 421 F.2d 1210 (7th Cir.), *cert. denied*, 400 U.S. 821, 91 S.Ct. 38, 27 L.Ed.2d 48 (1970); *Kelly v. Lethert, supra; United States v. Strebler*, 313 F.2d 402 (8th Cir. 1963); *Bloom v. United States, supra.*

■ There are two things that should perhaps be said about a § 6672 assessment. First, while the assessment will never be made if the employer pays over the withholdings, the assessment, if it is made, imposes a direct and personal, as opposed to a vicarious, liability on the person who is assessed. *Kelly v. Lether, supra*, 362 F.2d at 632. Second, while two or more persons may be jointly and severally liable under § 6672, the government is not entitled to more than one satisfaction of the tax liability owed to it. Ibid. at 635.

In *United States v. Hill*, 368 F.2d 617, 621 (5th Cir. 1966), the elements of a § 6672 liability were set out substantially as follows: (1) There must be a person. (2) He must have been required to collect, truthfully account for, and pay over taxes. (3) He must willfully fail to collect or willfully fail to truthfully account for and pay over the taxes in question.

The first two elements of the statutory liability are encompassed in the concept of a "responsible person," a term that frequently appears in the cases and that counsel on both sides have used in this case.

■ Where corporate withholdings are involved, a responsible person is normally a managing officer or employee of the corporation, but he need not be such an officer or employee, and there may be more than one responsible person. A corporate officer or employee is responsible in present context if he has significant, albeit not necessarily exclusive, authority in the field of corporate decisionmaking and action where taxes due the federal government are concerned; but he need not be an actual disbursing officer. *See Haffa v. United States*, 516 F.2d 931 (7th Cir. 1975); *Adams v. United States*, 504 F.2d 73 (7th Cir. 1974); *Monday v. United States, supra; United States v. Hill,*

*supra; Scott v. United States,* 354 F.2d 292, 173 Ct.Cl. 650 (1965); *Kelly v. Lethert, supra; United States v. Strebler, supra; Bloom v. United States, supra.*

■ In order for a responsible person to be liable under § 6672, his act or omission must be willful. That does not mean, however, that the person must act with evil or fraudulent intent, and many persons who have been held liable under the statute have not so acted. It is sufficient if the person acts or fails to act consciously and voluntarily and with knowledge or intent that as a result of his action or inaction trust funds belonging to the government will not be paid over but will be used for other purposes. *Kalb v. United States, supra; Harrington v. United States,* 504 F.2d 1306 (1st Cir. 1974); *Burden v. United States,* 486 F.2d 302 (10th Cir. 1973), *cert. denied,* 416 U.S. 904, 94 S.Ct. 1608, 40 L.Ed.2d ·109 (1974); *Dudley v. United States,* 428 F.2d 1196 (9th Cir. 1970); *Monday v. United States, supra; United States v. Strebler, supra; Bloom v. United States, supra.*

In *Kalb v. United States, supra,* 505 F.2d at 511, the court after rejecting an argument of the government that a corporate officer acts willfully "[if] he should have known that taxes owed were not paid," had this to say:

. . . Conduct amounting to no more than negligence is not willful for purposes of § 6672. *Dudley v. United States,* 428 F.2d 1196, 1200 (9th Cir. 1970). It is, however, not necessary that evil motive or intent to defraud be proven in order to establish willfulness. *Monday v. United States,* 421 F.2d at 1216; *Bloom v. United States,* 272 F.2d at 223. *Monday* defined willful action under § 6672 as 'voluntary, conscious and intentional—as opposed to accidental—decisions not to remit funds properly withheld to the Government.' 421 F.2d at 1216. That definition has been widely accepted. *Dudley v. United States,* 428 F.2d at 1198 n. 3. *See e. g., Spivak v. United States,* 370 F.2d 612, 615 (2d Cir.), cert. denied, 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625

(1967). *Monday* also points out, as has to be the case, that willful conduct 'may also indicate a reckless disregard for obvious or known risks.' 421 F.2d at 1215. Willful conduct also includes failure to investigate or to correct mismanagement after having notice that withholding taxes have not been remitted to the Government. (Citations omitted.)

## II.

We take up now the contention of plaintiff that he was entitled to a directed verdict, or later, to a judgment notwithstanding the verdict. He insists that the evidence establishes as a matter of law that he was not a responsible person as far as the tax liabilities of Archway were concerned, and that he did not willfully fail to truthfully account for and pay over Archway's withholdings for the first two·quarters of 1970.

If there was no substantial evidence to sustain the jury's verdict, plaintiff is entitled to have judgment entered in his favor; otherwise he is not so entitled. *United States v. Strebler, supra,* 313 F.2d at 403 n. 1.

■ In determining whether there was sufficient evidence to take the case to the jury and whether the jury's verdict was supported by substantial evidence, we are required to view the evidence in the light most favorable to the government, to give to the government the benefit of all favorable inferences reasonably to be drawn from the evidence, and to uphold the jury's verdict unless we are persuaded that the proof was such that reasonable men could not differ as to the inferences or conclusions to be drawn from the evidence. *See Linn v. Garcia,* 531 F.2d 855, 858 (8th Cir. 1976), and cases cited. The applicability of that review standard to a § 6672 case has been recognized in *Harrington v. United States* and *United States v. Hill,* both *supra.*

■ The record in the case is extremely voluminous, and no useful purpose would be served by undertaking to discuss it in detail.

Plaintiff testified extensively in his own behalf; he called witnesses and introduced forty documentary exhibits. Counsel for the government cross-examined plaintiff at length; the government introduced and read in evidence over the objection of plaintiff portions of the discovery deposition of J. I. Tipton; it called certain witnesses, and it introduced forty-four exhibits.

In certain respects the evidence is confusing, conflicting and contradictory. It is not our function to resolve conflicts in the evidence or to choose between permissible inferences that reasonable men might draw from the evidence.

The record reflects that Archway was organized in June, 1966 to engage in the business of erecting prefabricated metal buildings under what amounted to subcontracts with general contractors who or which had sold the buildings and contracted for their erection.

The principal general contracting firm referred to in the record was A.D.E. Construction Company (ADE), the stock in which was owned by plaintiff and by M. A. Steinback. Archway was organized for the business convenience of ADE, and throughout Archway's operations it was essentially a "client corporation" of ADE in that it looked primarily to that company for its subcontracting work. While, as indicated, Tipton was given 60% of the stock in Archway, he did not assume corporate office. The reason for that was that Tipton is essentially an iron worker or a supervisor of iron workers and he desired to continue to do field work; that would have been prohibited by the rules and regulations of the International Association of Bridge, Structural and Iron Workers of which Union Tipton was a member, if Tipton had held corporate office or had been a member of Archway's board of directors. Tipton was paid a salary based on the union scale for an individual employed to perform in the field the functions that Tipton performed.

Archway operated from the middle of 1966 to the fall of 1970. It was minimally capitalized; it had no reserves to speak of, and its ability to operate depended upon its ability to collect sums owed to it by general contractors, like ADE, for which it did erection work. As long as Archway had profitable contracts and as long as the general contractors paid their obligations promptly, Archway had a sufficient cash flow to meet its payrolls and pay its obligations. The continued existence of an adequate cash flow was indispensable to the continued existence of Archway.

In 1969 or 1970 Archway apparently entered into some improvident contracts and experienced serious collection difficulties. By the summer and fall of 1970 it had run out of money and collapsed.

When the collapse occurred, Archway had not paid over to the government its withholdings for the first and second quarters of 1970. Prior to the cessation of Archway's activities, a check on Archway's general account was drawn in favor of the Internal Revenue Service in a sum somewhat in excess of $20,000.00 in payment of withholdings due with respect to the first quarter of 1970; that check was dated July 31, 1970 and was signed by Tipton and the plaintiff. At about the same time plaintiff executed the quarterly withholding tax return (IRS Form 941) covering the quarter just mentioned. When the check was drawn, Archway did not have sufficient funds in the bank to pay it; this fact was known to plaintiff. It was decided that the check would be held by Tipton for the time being, that he would undertake to collect certain outstanding accounts receivable and would then mail the check to the IRS as soon as possible. The check was never mailed, a fact which plaintiff soon discovered from talking with Tipton about his collection efforts. The Form 941 for the first quarter was filed belatedly, and a similar form for the second quarter was filed at some later time, but no part of the second quarter withholdings was ever paid over.

The cash disbursement records of Archway reflect that from January 1, 1970 to October 29 of that year $155,083.31 was transferred from the corporation's general account to its payroll account and presumably was paid out as wages to employees.

During the same period of time total withdrawals from the general account amounted to $282,371.10.[6]

No checks in favor of employees drawn on the payroll account were signed by plaintiff. However, checks drawn on the general account had to be signed by two people. Plaintiff, Tipton and Steinbeck were all authorized to sign checks on that account, and most of the checks drawn on that account were signed by plaintiff and Tipton. Plaintiff testified that he signed many of the checks in blank and left them with Tipton to be filled out both with respect to payees and with respect to amounts.

There is little question that Tipton managed the day to day operations of Archway, and that he also had contracting authority, which he exercised from time to time. And the principal question in the case is whether the jury was justified in finding that plaintiff was so related to the corporation and had sufficient authority with respect to and decisional voice in the financial affairs of the corporation as to make him a "responsible person" within the meaning of § 6671(b).[7]

Plaintiff testified that although he owned 20% of the stock in Archway and was the president of the corporation, his office was merely "titular," and that he was simply a figurehead. According to plaintiff, the business belonged to Tipton to run as he chose, and plaintiff denied that he had any significant responsibility or authority with respect to the business affairs of the corporation, including the discharge of its withholding tax obligations. To buttress his own testimony plaintiff relied on the testimony of other witnesses called by him, and on what he contended to be the proper interpretation of the documents that were introduced in evidence.

The jury was not required, however, to accept his testimony at face value, or to accept automatically either his version of the events that occurred during the life of Archway or his characterization of his relationship with the company. In coming to its conclusions the jury had a right to consider all of the evidence in the case.

The portions of the Tipton deposition that the government was permitted to read into the record contradicted the testimony of plaintiff that he was a mere "titular" president of the corporation and a cipher in corporate affairs. According to Tipton, plaintiff was quite active in the management of the business and played a distinct part in the making of corporate decisions. He testified that in fact many important decisions were made by plaintiff rather than by Tipton.

Apart from the testimony of Tipton, admissions made by plaintiff and undisputed facts developed by the evidence brought to light factors which the jury had a right to take into consideration in determining whether plaintiff was a responsible person and whether he willfully failed to discharge a duty imposed upon him with respect to the obligation of Archway to account for and pay over the withholdings with which we are concerned. We will mention some of those factors briefly.

To start with, the jury might have considered that Archway was not set up originally for the primary purpose of operating an independent erection business. It was set up as a convenience to and in the interest of ADE. The jury might also have thought that it was not too material to plaintiff, Steinback and Tipton whether Archway earned substantial operating profits, and that they would be satisfied if Archway paid its own way. Tipton would receive his compensation at union scale, and ADE's dealings with Archway would yield profits to the former company which would inure to the benefit of plaintiff and Steinback.

**6.** The source of those figures is Archway's Cash Disbursement Journal which is in evidence.

**7.** Plaintiff does not complain about the definition of "responsible person" which appears in the instructions of the district court, and we consider that the instructions given in that connection accurately and adequately defined the term.

The record reflects that before plaintiff and Steinback formed ADE, plaintiff had operated an accounting firm in St. Louis. He was fully familiar with the withholding tax laws and with the obligations of employers periodically to file returns of withholdings and to pay over the withholdings to the government. And he also was aware of the fact that in certain circumstances a corporate officer may be held liable for the tax obligations of the corporation should § 6672 be invoked against the officer.

Plaintiff signed the Form 941 for the first quarter of 1970, and he also signed the corporation's federal income tax return for the fiscal year ending April 30, 1970. He had signed numerous earlier Forms 941 and some income tax returns. When he signed the first quarterly return of withholdings in July, 1970, he knew that the return should have been filed not later than April 30, 1970; he knew that the withholdings for the first quarter had not been paid over, and he knew that the corporation did not have sufficient funds to make the payment. Nevertheless, he co-signed the $20,000.00 check, dated July 31, 1970, and then left it in Tipton's possession. He soon discovered that the check had not been mailed to the Internal Revenue Service, but he continued to co-sign checks on the general account as long as Archway was able to keep its corporate head above water.

Plaintiff knew that at some point in time, probably in late February or early March, 1970, Tipton had unaccountably disappeared from the St. Louis area and remained gone for a period of time, the length of which is not definitely shown by the record. During that period of time plaintiff called on Mrs. Tipton to turn over to him such books and records as she had in her possession, and he also picked up the formal books of the corporation from the accounting firm of Ingham, White and Scherle of St. Louis County for the purpose of familiarizing himself fully with the business condition of Archway.

Plaintiff was aware that thousands of dollars were being transferred periodically from the general account to the payroll account and were being paid out as wages that were subject to federal withholdings; he also knew that thousands of dollars were being spent out of the general account for other purposes.

Plaintiff as an experienced accountant knew or should have known that under the provisions of FTR § 31.6302(c)–1 Archway was required to pay over its withholdings for the first two months of each calendar quarter into a recognized federal depository not later than the fifteenth day of the succeeding month, and he knew that Archway was not doing that. He also knew that throughout 1969 Archway was not filing its quarterly returns on time and was not paying over its withholdings within thirty days after the expiration of each calendar quarter. For example, the record reflects that the return for the third quarter of 1969 which was due not later than October 31, 1969 was not filed and the withholdings paid over until January 15, 1970. The return for the fourth quarter of 1969 which was due not later than January 31, 1970 was not filed until March 9 of that year.

While plaintiff testified that he signed many general account checks in blank, he did not seriously contend that the check of July 31, 1970 that has been mentioned was blank when he signed it. And, as stated, he knew that the check would not be honored if presented at the time, and he knew that it was never presented.

Nevertheless, with the knowledge of all of those facts, and with knowledge that a corporate officer may be held personally liable under § 6672, plaintiff took no firm steps to see to it that the withholdings were paid over to the government nor did he ever resign from his "titular" office in the corporation.

While the jury was not required to find that plaintiff was a responsible person, we think from our consideration of the record as a whole that the jury was free so to find, and that it was free also to find that plaintiff's failure to see to it that the taxes owing to the government were paid was willful in the sense that he and Tipton were consciously and voluntarily using funds that

equitably belonged to the government and that should have been paid over to the government to meet payrolls and pay operating expenses. That plaintiff and Tipton may have hoped that some day Archway's affairs would improve to the extent that it could become current with respect to its withholding tax obligations is not material.

In short, we find that the district court did not err in submitting the case to the jury, and that the jury's verdict is supported by substantial evidence.

### III.

We turn now to a consideration of other assignments of error brought forward on behalf of plaintiff.

■ Toward the conclusion of the trial, counsel for the plaintiff requested the trial court in the presence of the jury to take judicial notice of the fact that the government had obtained a default judgment against Tipton, and asked leave to read to the jury portions of the record reflecting the government's successful effort to obtain such a judgment. The government objected to those requests and they were denied. The court pointed out that the default judgment against Tipton was not yet final, and that in any event the matter would be taken care of in the instructions. Counsel for plaintiff claims that the action of the district court was erroneous. We reject that claim.

The fact that the government had filed a Rule 13(h) counterclaim against Tipton and had obtained a default judgment, whether final or not, against him was legally immaterial as far as the liability of the plaintiff was concerned. As we have pointed out, and as the district court told the jury, there may be more than one responsible person who may be liable to the government under § 6672, although the government is not entitled to collect the same § 6672 penalty twice. *Monday v. United States, supra,* 421 F.2d at 1214; *Kelly v. Lethert, supra,* 362 F.2d at 635; *Scott v. United States, supra,* 354 F.2d at 296. In any event counsel for plaintiff was able to make his point before

the jury and would have gained nothing substantial had his requests been granted.

Plaintiff also contends that the district court erred in permitting counsel for the government to read into evidence certain portions of the discovery deposition of Tipton. The deposition was offered on the theory that at the time of trial in St. Louis, Tipton was more than one hundred miles from that city, and that the deposition, or selected parts of it, were admissible under Fed.R.Civ.P. 32(a)(3)(B).

Counsel for plaintiff argued that the deposition was so inherently untrustworthy that it should be excluded and contended further that no showing had been made that as of the date upon which the deposition was offered Tipton was in fact more than one hundred miles away from St. Louis.

■ The deposition indicates that Tipton had many memory problems and he admitted that he has had serious trouble with his memory for the past several years; prior to answering certain questions Tipton would confer with his wife. Some of his answers to questions amounted to nothing more than assumptions. Those considerations naturally affected the credibility of Tipton and the weight to be given to his testimony, but they did not call for the suppression of the entire deposition.

■ Rule 32(a)(3) provides that the deposition of a witness may be offered in evidence in lieu of his testimony if the trial court finds, among other things that the witness is more than one hundred miles from the place of trial. The proximity of the witness to the place of trial is to be determined as of the time at which the deposition is offered. 8 Wright & Miller, Federal Practice & Procedure, § 2146, p. 458.

The deposition was taken on January 2, 1975 in the office of the United States Attorney in Fort Smith, Arkansas. Present at the taking of the deposition were Tipton and his wife, counsel for the government, and counsel for plaintiff. Tipton testified that he was living a short distance south-

west of Booneville, Arkansas, which is not far from Fort Smith. He also testified that before he became associated with Archway in 1966 he had lived in Oklahoma City, Oklahoma and had been employed by Bedingfield Construction Company.

In objecting to the offering of the deposition in evidence a little less than seven months after it was taken, counsel for plaintiff represented to the court that Tipton was no longer living near Booneville; however, he made no affirmative suggestion or showing that Tipton had come back to Missouri or was in St. Louis or within one hundred miles thereof.

In admitting the portions of the deposition that the government offered, we think that the district court found implicitly that Tipton at the time was more than one hundred miles away from St. Louis, and in that connection the district court properly took judicial notice of the fact that Fort Smith is more than one hundred miles distant from St. Louis; similar notice may be taken with respect to all of Logan County, Arkansas in which Booneville is located.

 Taking into consideration the fact that less than seven months had elapsed between the taking of the deposition and the offering of it in evidence, and taking into consideration the fact that Tipton would not have appeared to have any reason to come back to the general St. Louis area after his earlier business experiences there, we think that there was an adequate basis for the district court's finding, and that it did not err in admitting the deposition. *Cf. Ikerd v. Lapworth,* 435 F.2d 197, 205 (7th Cir. 1970).

Finally, plaintiff argues that the district court erred in refusing to give four of plaintiff's requests for instructions and in giving eight instructions requested by the government.

The instructions requested by plaintiff were standard instructions and were adequately covered by the instructions given by the court. The instructions requested by the government and given by the district court must be considered in the light of other instructions, and the entire charge must be considered as a whole. When the entire charge is so considered, we think that it stated the governing law fairly and correctly and was not inflammatory or unfair or prejudicial to plaintiff.

Finding no error, we affirm the judgment of the district court.