1997 SD 73

**Larry E. MARONEY, Employee, Claimant and Appellant,**

**v.**

**Curtis R. AMAN and A–J Trucking, Employer and Appellee,**

**and**

**Wausau Insurance Companies, Defendant and Appellee.**

**No. 19592.**

Supreme Court of South Dakota.

Considered on Briefs Jan. 14, 1997.

Decided June 18, 1997.

Robert M. Ronayne and Joe L. Maynes of Ronayne and Wein, Aberdeen, for employee, claimant and appellant.

Susan Jansa Brunick and Kristi Geisler Holm of Davenport, Evans, Hurwitz & Smith, Sioux Falls, for appellees.

AMUNDSON, Justice.

[¶ 1] Department of Labor (Department) denied Larry E. Maroney (Maroney) workers' compensation benefits, finding that his injuries did not arise out of and in the scope of his employment. The circuit court affirmed, and Maroney appeals. We affirm.

## FACTS AND PROCEDURE

[¶ 2] On October 16, 1991, Maroney, a truck driver, was traveling north on United States Highway 83. It is undisputed that, after passing a utility truck, Maroney's truck went off the road to the right. The truck then traveled across a pasture, hit a railroad

embankment, and landed in a slough on the north side of the embankment.

[¶ 3] As a result of the accident, Maroney suffered numerous cuts, abrasions and bruises, and a broken left arm. In addition, he suffered an occlusion of his right carotid artery, commonly known as a stroke, which paralyzed the left side of his body and rendered him permanently and totally disabled.

[¶ 4] Maroney filed a claim for workers' compensation benefits.[1] His employer, A–J Trucking and Curtis R. Aman, and his insurer, Wausau Insurance Companies (collectively referred to as Wausau), filed a joint answer denying that Maroney's injuries arose out of and in the scope of his employment. Department denied workers' compensation benefits, agreeing that Maroney's injuries did not arise out of and in the scope of his employment.

[¶ 5] Maroney appealed to the circuit court, which affirmed Department's conclusion. He appeals the circuit court's decision, raising the following issues:

   I.    Whether the occlusion of Maroney's right internal carotid artery arose out of and in the scope of his employment.

   II.   Whether portions of the depositions of an expert witness should have been admitted as evidence.

   III.  Whether Department erred in refusing to allow the testimony of an expert witness.

## STANDARD OF REVIEW

[¶ 6] The standard of review applied to administrative appeals is well-established: We will overrule an agency's findings of fact only when they are clearly erroneous. The question is not whether there is substantial evidence contrary to the agency finding, but whether there is substantial evidence to support the agency finding. In other words, even if there is evidence in the record which tends to contradict De-

partment's factual determination, so long as there is some "substantial evidence" in the record which supports Department's determination, this court will affirm. Great weight is given to the findings made and inferences drawn by an agency on questions of fact. Conclusions of law are given no deference and are fully reviewable. When reviewing evidence presented by deposition, we do not apply the clearly erroneous standard but review that testimony as though presented here for the first time.

*Hendrix v. Graham Tire Co.*, 520 N.W.2d 876, 879 (S.D.1994) (citations and quotations omitted). The video depositions of four doctors,[2] however, are reviewed under a clearly erroneous standard because Department had the opportunity to view their credibility. The use of video depositions in this case is similar to a jury's use of such depositions in a medical malpractice case, wherein they are allowed to assess the credibility of the deponent via video tape. *See State v. Barber*, 1996 SD 96, ¶ 23, 552 N.W.2d 817, 821 (stating it is the jury's responsibility to examine a witness' credibility). Just as a jury is allowed to assess a witness' credibility while watching a video deposition, so is Department. *See, e.g.*, 44 AmJur *Model Trials* § 35, at 251 (1992) (stating videotaped testimony is "capable of preserving the demeanor of the witness"). Therefore, the depositions of these four medical experts will be reviewed under the same clearly erroneous standard applied to live witnesses. *See, e.g., Curtis v. State*, 301 Ark. 208, 783 S.W.2d 47, 50 (1990) (holding that an appellate court should apply a clearly erroneous standard of review to video depositions).

## DECISION

[¶ 7] **I.  Whether the occlusion of Maroney's right internal carotid artery arose out of and in the scope of his employment.**

[¶ 8] Maroney contends that the occlusion of his right internal carotid artery on

---

1.  Maroney received workers' compensation benefits for the reasonable medical treatment related to the injuries directly related to the accident, such as the broken arm. However, the benefits sought by Maroney in this cause of action are for the disability resulting from the stroke.

2.  The four doctors are: Dr. Latchaw, Dr. Davis, Dr. Famestad, and Dr. Vessey, all discussed infra.

the day of the accident was traumatically induced and therefore arose out of and in the scope of his employment. To have a traumatically induced stroke, it is admitted that he must have suffered a hyper-extension or flexion of the neck sufficient to cause an occlusion.

[¶ 9] Maroney has the burden of proving that there is a "causal connection between his injury and his employment." *Caldwell v. John Morrell & Co.*, 489 N.W.2d 353, 357 (S.D.1992). Maroney must demonstrate by a preponderance of the evidence that an employment activity " 'brought about the disability on which the workers' compensation is based; a possibility is insufficient and a probability is necessary.' " *Id.* at 358 (quoting *Wold v. Meilman Food Indus.*, 269 N.W.2d 112, 116 (S.D.1978)).

[¶ 10] Department found that Maroney's occlusion "occurred naturally, and thus did not arise from hazards to which the employment exposed [Maroney] while doing his work." The ultimate conclusion of Department was that Maroney "failed to demonstrate by a preponderance of the evidence that his stroke and resulting disability arose out of his employment." The circuit court affirmed.

### A. Testimony of Maroney and Other Witnesses

[¶ 11] Since Maroney was the only person to experience and/or witness the events on October 16, 1991, we first examine his testimony. Department ultimately concluded his recollection of the events is "inconsistent, and is rejected."

[¶ 12] Maroney testified that he left the road about 150 feet from a particular area, the Lowry corner, while Officer Price, the highway patrol officer who arrived at the scene and investigated the accident, testified it was half of that distance. Maroney claimed he attempted to brake twice before the Lowry corner but, while Officer Price was specifically searching for signs of braking, he found no such observable signs. Maroney also contended he actually hit the Lowry corner, but Officer Price stated there

were no signs of impact with the Lowry corner and the tracks indicated that Maroney traveled across the Lowry road. Although there were no signs of impact with the Lowry corner, Maroney claimed the impact caused his truck to run wide open.

[¶ 13] Maroney's accident reconstructionist, Lewis Dirks (Dirks), conceded that the point of departure from the Lowry road could not be ascertained. In addition, the angle of the slope on the descending side of the Lowry road was unknown, a fact Dirks acknowledged was very important in determining the angle of the truck and degree of control that would have been necessary to keep the truck upright. Dirks' opinion was only that Maroney would have had enough control to exercise some steering input and apply the brakes, but he could not estimate how much control would have been required.

[¶ 14] Maroney also claimed his hands were on the steering wheel at all times. However, he received a deep laceration on his left hand and there are no sharp objects on the steering wheel or in other areas of the cab. Based on this disputed aspect of the case, Department did not accept Maroney's claim that he had complete control of the truck with both hands when he sustained a deep laceration to his left hand. It is Department's responsibility to determine the credibility of each witness, including Maroney. *Petersen v. Hinky Dinky*, 515 N.W.2d 226, 235 (S.D.1994).

[¶ 15] Maroney testified that he initially began losing feeling on his left side during the ambulance ride from Mobridge to Bismarck. Officer Price arrived at the scene within minutes of the accident and noted that Maroney's speech was impaired and he did not have the use of one of his hands. Josephine Holder and Kevin Stoik, volunteer ambulance attendants, confirmed Officer Price's observations by testifying that, during the initial ambulance ride to Mobridge, Maroney complained of lack of feeling on one side and visibly suffered from immobility on one side.[3]

---

3. Furthermore, Maroney asserted that Leo Baumgartner (Baumgartner), the first person to arrive at the scene, told him to remain in the truck, whereas Baumgartner testified he in-

[¶ 16] Most significantly, Maroney admitted to Ken Fuhrmann, the claims adjuster, that he could not remember much of the accident, including entering the ditch. He stated the last thing he remembered was heading across two lanes.[4] Later, during his deposition, Maroney stated that he began recalling the details of the accident after Fuhrmann left his hospital room.

[¶ 17] In light of this contradictory evidence surrounding what occurred at the time of the accident, Department was required to determine which version was credible. This record contains substantial evidence to support Department's finding that Maroney's testimony was inconsistent.

### B. Medical Testimony

██ [¶ 18] "Where there is no obvious causal relationship, the testimony of a medical expert may be necessary to establish the causal connection." *Howe v. Farmers Coop. Creamery of Madison*, 81 S.D. 207, 212, 132 N.W.2d 844, 846 (1965). Department must determine the credibility of each witness. *Petersen*, 515 N.W.2d at 235. Furthermore, Department is "free to accept all of, part of, or none, of an expert's opinion." *Hanson v. Penrod Constr. Co.*, 425 N.W.2d 396, 398 (S.D.1988). The testimony accepted must indicate more than a possibility that the incident caused the disability. *Day v. John Morrell & Co.*, 490 N.W.2d 720, 724 (S.D. 1992). Rather, there must be sufficient evidence upon which to base a workers' compensation award. *Id.*

[¶ 19] Thus, the medical testimony in this case must demonstrate by a preponderance of the evidence that Maroney sustained physical injuries from his accident that independently contributed to a dissection or tear in the innermost layer of his carotid artery, producing an occlusion. *See Caldwell*, 489 N.W.2d at 358. The record concerning medical testimony is voluminous in this case. Since there is agreement as to the existence of a stroke, each physician's testimony discussed on appeal concerns merely the cause of the stroke. Maroney attempts to establish that the stroke was traumatically induced, while Wausau maintains the stroke spontaneously occurred, thereby causing the accident.

[¶ 20] Maroney's expert witnesses included Dr. James Collins, Dr. Ellen Nichols, Dr. Roger Kennedy, Dr. Garry Famestad, Dr. John Davis, and Dr. John Vidoloff. Dr. Collins, the emergency room physician who was the first to see Maroney, noted that he would have expected Maroney to have experienced neck pain or spasm from significant hyper-extension or hyperflexion. Dr. Nichols, the initial treating neurologist at a hospital in Bismarck, eventually became Maroney's treating physician. She first saw Maroney on the day of his accident and observed no trauma to the neck and made no clear determination as to whether the stroke was caused by trauma. Dr. Kennedy, a neurosurgeon, provided treatment to Maroney for several days while Dr. Nichols was unavailable. Since his statements regarding the cause of the stroke were inconsistent, Department rejected his testimony.[5] Dr. Famestad, a radiologist for the Veterans Administration Hospital, reviewed Maroney's radiological studies and testified that his stroke was produced by trauma. His conclusions were directly contradicted, however, by Dr. Richard Latchaw, a neuroradiologist. Thus, they were rejected. Dr. Davis, a cardiologist for the Veterans Administration Hospital, concluded that the injury was traumatically induced,

---

formed Maroney he was going to help him out of the truck. Although Maroney stated the door of the truck was already open, Baumgartner remembered opening the door.

4. This statement was recorded by Fuhrmann, who later testified that the secretary transcribing the conversation was under the impression that Maroney said "two lanes." Fuhrmann recalls Maroney stating "tulanes." Wausau claims Maroney stated "toules." Neither "tulane" nor "toules" is defined in the dictionary.

5. Dr. Kennedy admitted that after the diagnostic testing was completed, he told Maroney's family: "We can't tell whether he sustained a carotid occlusion which led to the accident or whether he possibly bruised or contused the carotid with secondary thrombosis." Later, three years after the accident, acknowledging that trauma in the immediate area of the neck is observable in the majority of cases where traumatically produced occlusions occur, Dr. Kennedy opined that the only change in circumstances from the time he spoke to Maroney's family was that he was contacted by Maroney's counsel.

yet he admitted that there was no substantial damage to Maroney's neck and he was unaware of the mechanics of any specific type of injury that would be necessary to produce a stroke. Based on this admission, Department rejected the opinion of Dr. Davis as speculative and lacking factual foundation. Dr. Vidoloff, a psychiatrist assisting Maroney with rehabilitation, was unable to testify that Maroney's stroke was traumatically induced.

[¶ 21] We then examine Wausau's medical expert testimony, including that of Dr. Scott Girard, Dr. Richard Latchaw, Dr. Ronald Vessey, Dr. Charles Hatsell, and Dr. Andrew Leemhuis. Dr. Girard, the general surgeon on call the night of the accident, testified that Maroney did not have any unusual tenderness to his neck and there was no obvious neck trauma. Dr. Latchaw, a neuroradiologist from the University of Minnesota, reviewed the diagnostic studies performed on Maroney. Noting that the CT scan performed within four hours after the accident indicated signs of stroke, he testified that such changes in a CT scan are more frequently seen much later in a traumatically induced stroke, and he would not have expected to see these signs on the CT scan if there were such a stroke as Maroney contends in this case. Dr. Vessey, board certified in internal medicine, testified that a person with a complete left-sided paralysis would feel pain in the back of the neck and that the left-sided paralysis would not have prevented Maroney from reporting pain or stiffness in his neck. He also noted that Maroney had no fracture of the neck or any

whiplash injury, concluding there were no injuries that were associated with an intimal tear of the right internal carotid artery.

[¶ 22] Dr. Hatsell, who "most persuaded" Department, has an M.D. and Ph.D. in engineering and is board certified in aerospace medicine, consisting of patient care and research in biomechanics and human factors.[6] He stated to a reasonable degree of medical probability that the stroke preceded the evolution of the motor vehicle accident and probably led to it. He also stated that strokes from trauma are exceedingly rare, whereas strokes from atherosclerosis are not.[7] Moreover, he noted that Maroney's stroke occurred at the location in the carotid artery which is the most common location for atherosclerotic strokes. In addition, he testified that the onset of the symptoms of Maroney's stroke was inconsistent with a traumatically induced stroke, because symptoms develop over time with traumatically induced lesions.[8] His study of Maroney's injuries also indicated that Maroney was not "tightly coupled" to the truck as it headed to the slough, as Maroney claimed.

[¶ 23] Dr. Leemhuis, a board certified neurologist and psychiatrist, testified that he had never seen a case of a traumatically induced stroke due to a hyper-flexion or hyper-extension injury. After reviewing the medical record of Maroney, he stated that the accident was the result of a stroke in progress.[9]

[¶ 24] After reviewing the depositions and transcripts of live testimony, we hold that

---

6. Biomechanics is the study of the effects of mechanical forces on the human body and the relationship between human factors and the best operating design of equipment.

7. Atherosclerosis is "an extremely common form of arteriosclerosis in which deposits of yellowish plaques (atheromas) containing cholesterol, lipoid material, and lipophages are formed within the intima and inner media of large and medium-sized arteries." Richard Sloane, *The Sloane–Dorland Annotated Medical–Legal Dictionary* 70 (1987). It is also noted that Maroney possessed three commonly known risk factors for stroke: smoking, age, and family history.

8. As to Maroney's claim that a dissection of the artery occurred, Dr. Hatsell stated that Maroney's neck would have had to be hyper-extended beyond physiologic limits with a hyper-extension

to the left. "Beyond physiological limits" was described to be the extent to which a joint can be moved without producing identifiable trauma. Concerning hyper-extension injuries, he noted that such injuries involve neck structures, ligamentous structures of the neck. He expected ligamentous injuries to the neck to be seen, but none existed. Dr. Hatsell further noted that, theoretically, carotid dissection can occur with neck flexion. In that case, the artery becomes trapped or pinned between some aspect of the mandible (jaw) and the spine. For such an injury to occur, since the mandible has to be driven backwards, there would be at least a dislocation of the temporal mandibular joint with associated symptoms. No evidence was presented that such an injury was sustained.

9. Department did not reference Dr. Leemhuis' testimony in its findings of fact.

there is substantial evidence to support Department's finding that Maroney failed to demonstrate by a preponderance of the evidence that he sustained physical injuries from his accident that independently contributed to a dissection or tear in the innermost layer of his carotid artery, producing an occlusion. As stated by the circuit court,

> there is sufficient evidence that [Maroney] did not complain of the type of pain in his neck which should have been present if one were to adopt the medical doctors' opinions who supported Maroney's theory. So also, there's an absence of evidence of trauma to the area of the neck in which ... the occlusion occurred.

The circuit court also referenced the evidence regarding the absence of braking by the truck, as well as the lack of evidence regarding the truck remaining upright due to Maroney's skilled driving, and Maroney's history of smoking. A review of this medical evidence shows there was substantial evidence to support Department's finding that Maroney failed to show his stroke arose out of and in the scope of his employment.

### [¶ 25] II. Whether portions of the depositions of an expert witness should have been admitted as evidence.

■ [¶ 26] At the hearing, Maroney offered the deposition testimony of Malcolm Lundgren (Lundgren), who was initially Wausau's witness. Lundgren was present during the second day of the hearing, but was never called by Wausau. While Lundgren was present, Maroney neither called him to testify nor subpoenaed him to testify at a later time. Wausau later released Lundgren after determining that his testimony was not needed. Lundgren then returned to Minnesota.

■ [¶ 27] Department excluded his deposition testimony because Maroney failed to demonstrate that Lundgren was unavailable to testify. Such evidentiary rulings are not disturbed absent a clear abuse of discretion. *Zepp v. Hofmann*, 444 N.W.2d 28, 31 (S.D. 1989). This standard was described in *Sowards v. Hills Materials, Co.*, 521 N.W.2d 649, 652 (S.D.1994): "Under the abuse of discretion standard, it is not for us to determine whether we would have made a like ruling, but whether a judicial mind in view of the law under the circumstances could reasonably have reached such a conclusion."

[¶ 28] Department, after entertaining arguments from both parties concerning this issue, stated:

> [C]ertain uses can be made of depositions in lieu of actual testimony. That there are fairly delineated exceptions to that. Ordinarily what has to happen, as I understand it, either the parties stipulate that the deposition is to be used at trial or that it meets one of the specific exceptions fully in order to be able to satisfy the rule. I do not believe that this fell under the exception for out-of-state deposition because the person was available in the hearing at the time that we had a hearing conducted. The witness is not unavailable, as I understand it, there has never been any showing of that, so we do not need to use a deposition in lieu of actual testimony. Otherwise as I understand it it's hearsay, and I would have to exclude it.

A review of SDCL 19-16-30, an exception to the hearsay rule, and cases which interpret the statute lead us to the same conclusion.[10] Pursuant to SDCL 19-16-30, Maroney had the burden of showing that Lundgren was unavailable to testify at the hearing. Maroney relies on SDCL 15-6-32(a)(3)(B),[11] and

---

10. SDCL 19-16-30 reads:
   Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, is not excluded by § 19-16-4 if the declarant is unavailable as a witness and if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.

11. SDCL 15-6-32(a)(3)(B) states:
   At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had due notice thereof, in

cases applying this statute, which state that the availability of the deponent depends upon the conditions as they exist at the time the deposition is offered: *Securities & Exchange Comm'n v. American Realty Trust,* 429 F.Supp. 1148, 1178 n27 (EDVa 1977), *rev'd on other grounds,* 586 F.2d 1001 (4thCir.1978), and *Hartman v. United States,* 538 F.2d 1336, 1345 (8thCir.1976). However, neither *Securities & Exchange Comm'n* nor *Hartman* involved a similar situation to the case at hand. Both merely made a general statement that unavailability is usually determined upon the conditions existing at the time the deposition is offered. *Securities & Exchange Comm'n,* 429 F.Supp. at 1178 n27 (citing 2a Barron & Holtzoff, *Federal Practice & Procedure* § 654, at 663); *Hartman,* 538 F.2d at 1345 (citing 8A Charles A. Wright Arthur R. Miller & Richard L. Marcus, *Federal Practice & Procedure* § 2146, at 458).

[¶ 29] In *United States v. International Business Machs. Corp.,* 90 F.R.D. 377, 381 (S.D.N.Y.1981), however, a similar situation occurred in which six of the depositions offered by IBM were the government's witnesses who testified live at trial. This opinion emphasized that a deposition is secondary to preferred live testimony, and stated: "[T]his court sees no reason why the deposition of a trial witness should be admissible when offered after the witness' appearance, particularly when IBM made no attempt to elicit the testimony it now seeks to offer by way of these depositions when the witnesses were on the stand." *Id.* at 382. On the other hand, the court noted that the witness' location was usually examined at the time of offering. *Id.* at 383. The court ultimately held:

> Examining the deponent's location only at the time the proponent offers the deposition would allow the parties to broaden the scope of deposition use by waiting until

accordance with any one of the following provisions:

. . .

> (3) The deposition of a witness, whether or not a party, may be used by a party for any purpose if the court finds:

. . .

> (B) that the witness is out of the state, unless it appears that the absence of the witness

deponents are at distant locations before offering the depositions. . . . [T]he time at which the deponent's location should be examined should extend beyond the time of offering to include any point during presentation of proponent's case when a trial subpoena could have been served.

*Id.* The court in *International Business Machs. Corp.* agreed with and cited the decision in *SCM Corp. v. Xerox Corp.,* 77 F.R.D. 16 (D.Conn.1977). In *SCM Corp.,* the court stated:

> It seems to me that a reasonable construction of Rule 32(a)(3)(B) to facilitate a "just and speedy" result, Fed.R.Civ.P. 1, is to prohibit deposition use at trial if the witness can be readily shown, without significant dispute, to be at a location within 100 miles of the courthouse when the deposition is offered, *or at a time during the proponent's case when a trial subpoena could have been served.*

*Id.* at 18 (emphasis added); *see also G.E.J. Corp. v. Uranium Aire, Inc.,* 311 F.2d 749, 754–55 (9thCir.1962) (disallowing the admission of a deposition when the witness appeared in person, noting that the continued presence of the deponent could have been secured); James B. Sloan & William T. Gotfryd, *Eliminating the 100 Mile Limit for Civil Trial Witnesses: A Proposal to Modernize Civil Trial Practice,* 140 FRD 33, 39 (1992) (stating, "It has long and vociferously been expressed by experienced trial courts and lawyers that the taking of evidence by live witnesses appearing before the jury is vastly preferable to reading depositions, or even use of video taped depositions.").

[¶ 30] This witness was present. Maroney could have subpoenaed him, but failed to do so. Based on this record, Department's decision that Maroney failed to demonstrate

was procured by the party offering the deposition; . . .

Lundgren's unavailability was not an abuse of discretion.

### [¶ 31] III. Whether Department erred in refusing to allow the testimony of an expert witness.

[¶ 32] Department granted Wausau's pretrial motion in limine precluding Dr. Harvey Loomstein from testifying. Maroney designated Dr. Loomstein as an expert in biomechanics. Maroney claims Department abused its discretion when it granted Wausau's motion because Dr. Loomstein's testimony would have assisted Department in determining whether Maroney's stroke was traumatically induced.

[¶ 33] In Schaffer v. Edward D. Jones & Co., we stated the standard of review to be applied in these circumstances:

> We review questions of admissibility of an expert witness' testimony under an abuse of discretion standard. We have long acknowledged that the trial court has broad discretion concerning the admission of expert testimony. The trial court's decision on such matters will not be reversed absent a clear showing of an abuse of discretion.

1996 SD 94, ¶ 6, 552 N.W.2d 801, 805 (citations omitted).

[¶ 34] According to SDCL 19–15–2:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

In State v. Hill, we applied this statute and stated criteria to be applied when determining the admissibility of expert testimony: "(1) the use of a qualified expert; (2) conformity to a generally accepted explanatory theory; (3) the proper subject matter; and (4) probative value compared to prejudicial effect of the testimony." 463 N.W.2d 674, 676–77 (S.D.1990).

[¶ 35] Department makes the initial determination as to whether the expert's testimony would "assist the trier of fact in understanding the evidence or determining a fact

in issue." Schaffer, 1996 SD 94, at ¶ 8, 552 N.W.2d at 805. Here, the trier of fact is Department. Thus, after reviewing Dr. Loomstein's deposition, Department had to decide whether his testimony would assist it in understanding the evidence in this case.

[¶ 36] Wausau argued that Dr. Loomstein was "not an expert in the fields in which he has rendered opinions[,]" and "the opinions which he formed were without factual basis, utilizing other hearsay testimony of non-testifying experts." Dr. Loomstein's credentials were clearly expressed to Department. He has a degree in psychology and counseling, and has completed an educational program in biomechanical trauma from Lynn University. He admittedly is not an engineer, a medical doctor, or an accident reconstructionist. Rather, he specializes in biomechanical trauma, which incorporates training in the field of medicine (neurology and orthopedics) with biomechanics. The testimony on which Dr. Loomstein relied included a drawing of the accident scene by Larry Parks, an accident reconstructionist; the opinion of Dr. Jonathan Walker, a neurologist, that Maroney's left side was not atherosclerotic; Walker's interpretation of certain studies conducted by the Air Force which show the effects of g-force on blood vessels and Walker's application of these studies to Maroney; and the opinion of Dr. Charles Benedict, an engineer, concerning the amount of g-force to which Maroney was exposed.

[¶ 37] Dr. Loomstein has been involved with soft tissue/chronic pain cases, the majority of which concern the central nervous system, head injuries, toxic torts and the effect that these have on the brain and the peripheral nervous system. However, this case was his first exposure to issues involving the internal carotid. In addition, his experience with cases involving strokes is strictly limited to a determination of the activity of a person who suffered a stroke. He has never made a determination regarding the cause of a stroke.

[¶ 38] In this case, Dr. Loomstein was asked to form an opinion to a reasonable degree of medical certainty as to whether Maroney's accident caused the stroke. However, he admits that he is not a medical

doctor, and has never made such a determination in the past. He also states, "it is true that I have not experienced a stroke case that was the result of a motor vehicle/truck accident[.]"

[¶ 39] In Carroll v. Otis Elevator Co., the court stated: "Whether a witness is qualified as an expert can only be determined by comparing the area in which the witness has superior knowledge, skill, experience, or education with the subject matter of the witness's testimony." 896 F.2d 210, 212 (7th Cir.1990) (citing *Gladhill v. General Motors Corp.*, 743 F.2d 1049, 1052 (4th Cir.1984)). Similarly, in *Tokio Marine & Fire Ins. Co., Ltd. v. Grove Mfg. Co.*, 958 F.2d 1169, 1173–75 (1st Cir.1992), expert testimony of a witness was excluded. The witness would have testified that a crane was defective, but the district court found that he was not qualified. *Id.* at 1173–74. Although he was a civil engineer, he admitted that he had never operated or designed a crane, and had never observed the crane involved in the accident. *Id.* at 1174. In order to testify as to the defectiveness of the crane, he had to be familiar with the crane. The judge ultimately concluded that the witness was more of a professional witness than an expert. The appellate court held that, while a witness is not required to possess "specific educational training in the area of expertise[,]" he "fail[ed] to measure up in any one of several possible ways—educationally or experientially[.]" *Id.* at 1175.

[¶ 40] Likewise, there is sufficient support for Department's finding that Dr. Loomstein was not qualified as a medical expert to determine the cause of a stroke to a reasonable degree of medical probability as required by precedent in this State. Therefore, Department did not abuse its discretion when it decided to exclude Loomstein's testimony.

[¶ 41] Affirmed.

[¶ 42] MILLER, C.J., and SABERS, KONENKAMP and GILBERTSON, JJ., concur.

